Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
Mary Taylor Stanberry
State Bar No. 24143781
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: emily.chou@vhh.law
blake.glatstein@vhh.law
mary.stanberry@vhh.law

PROPOSED ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| ECUBE LABS CO. | ) | Case No. 25-43950 |
| | ) | |
| | ) | |
| Debtor. | ) | |

### DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES, EMPLOYMENT TAXES, AND OTHER EMPLOYEE-BENEFIT OBLIGATIONS

TO THE HONORABLE MARK X. MULLIN:

COMES NOW Ecube Labs Co. (the "Debtor"), as debtor in possession, and files this *Debtor's Motion for Order Authorizing the Debtor to Pay Pre-Petition Wages, Employment Taxes, and Other Employee-Benefit Obligations* (the "Motion"). In support of this Motion, the Debtor respectfully states as follows:

## I. SUMMARY

1. This Motion relates to the Debtor's (a) payroll for prepetition wages and salaries earned from October 1, 2025, through October 9, 2025, (b) payment of employer taxes associated with the prepetition wages and salaries requested to be paid herein, (c) payment of employment benefits, (d) permit employees to use, post-petition, paid time off, holidays, and sick leave days that they accrued prepetition, and (e) reimbursement of any de minimis expenses incurred prepetition by the employees in the ordinary course.

2. The Debtor has six employees ("Employees"), all of whom are salaried and paid twice a month. The next payroll is due on October 15, 2025, which will cover the pay period of October 1, 2025, through October 14, 2025. This pay period includes nine (9) prepetition days, from October 1. 2025, to October 9, 2025.

## II. JURISDICTION

3. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The predicates for the relief requested are sections 105(a), 363(b), 507(a)(4), 507(a)(5), and 541(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003(b) and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III. PROCEDURAL BACKGROUND

4. On October 10, 2025 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code.

5. The Debtor continues to manage and operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this case.

## IV. BACKGROUND

### A. About the Debtor

6. The Debtor is a Delaware corporation. The Debtor is engaged in and provides waste management services for the commercial sector.

7. Unlike traditional waste management companies, the Debtor does not have its own fleet of dump trucks, a pool of drivers as employees, or boots-on-the-ground salespeople across the country. The Debtor maintains a small staff of office employees for administrative and back-office tasks, the Debtor contracts with third-party staffing agencies to staff the company's remote sales and customer service teams, and the Debtor contractually engages independent, small-business trash haulers local to the Debtor's customers to provide waste pickup services. In simple terms, the Debtor connects local businesses with local waste haulers. As of the Petition Date, the Debtor has grown its business to thousands of customers.

### B. The Pre-Petition Lawsuit

8. In April 2024, the Debtor was sued by competitor entities El Paso Disposal, LP, Waste Connections of Texas, LLC, and Waste Connections Lone Star, Inc. (the "WC Action"). El Paso Disposal, LP, Waste Connections of Texas, LLC, and Waste Connections Lone Star, Inc. (collectively, "Waste Connections")[1] are related entities to Waste Connections, Inc., one of the largest waste management companies in the world. Waste Connections alleges that the Debtor committed, among other things, computer fraud and abuse, trade secret misappropriation, and common law fraud. The lawsuit was filed in the United States District Court for the Western District of Texas, El Paso Division.

---

[1] In March 2025, Waste Connections amended its Complaint to add Waste Connections US, Inc., another Waste Connections' entity. Therefore, "Waste Connections" also collectively refers to Waste Connections US, Inc.

9.  As of the Petition Date, the WC Action remains in the discovery phase. The defense cost has taken a toll on the Debtor's finances. The Debtor's financial health has deteriorated to such an extent that the Debtor now struggles to meet its business operational needs on a daily basis. The Debtor now has significant debts and cannot meet its obligations as they become due. The Debtor seeks to use the breathing room provided by the automatic stay to evaluate its options and viability.

## V. PREPETITION EMPLOYEE OBLIGATIONS

**A.    Prepetition Employee Obligations**

10.  The Debtor currently employs six Employees on salary basis. The Employees are paid on a bi-monthly basis, in the middle and at the end of each calendar month.

11.  The Debtor contracts with ADP to process payroll. For each pay period, ADP draws the funds for payroll from the Debtor's bank account two days prior to when payroll is to be made. ADP charges a fee for processing each payroll. The fee is drawn by ADP from the Debtor's account with each payroll. Accordingly, ADP is not owed service charges for any payroll processed prior to the Petition Date. ADP handles the federal withholding from the employees' gross pay and draws the funds for the employer portion of employment taxes along with the payroll and remit both to the taxing authorities. ADP also draws from the Debtor's account the funds to pay premiums for health and medical insurance provided by the Debtor to the Employees. ADP also withholds and remits such other amounts as designated by the Employees or other authorities and remits the same to relevant parties.

12.  The next payroll is due October 15, 2025. The October 15 payroll covers the pay period from October 1, 2025, through October 15, 2025. The October 15 payroll includes nine

(9) prepetition days (October 1-9). The gross salary for the nine prepetition days for the Employees aggregate approximately $7,260.

13. The Debtor seeks the authority to pay the approximately $7,260 in gross salaries earned by the Employees prepetition.

14. The Debtor also seeks the authority to pay the employment taxes associated with the prepetition salaries in the approximately amount of $820.

15. The prepetition salary owed to each of the Employees is well below the $15,150 cap under section 507(a)(4) of the Bankruptcy Code.

**B.    Employment Benefits Obligations**

16. The Debtor offers health insurance to the Employees which is paid by the Debtor. The health insurance is an integral and essential component of the total compensation package offered by the Debtor to the Employees.

17. The premium for insurance coverage for the month of October is approximately $3,022 combined for all of the Employees. The October coverage period includes nine (9) prepetition days, from October 1, 2025, through October 9, 2025.

18. The Debtor requests authority to pay any prepetition amounts attributable to such health insurance benefits. The amount sought to be paid is well within the cap set by section 507(a)(5) of the Bankruptcy Code and are obligations that arose within one hundred and eighty (180) days of the Petition Date.[2]

---

[2] The priority cap set forth in section 507(a)(4) which applies to "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual" is $15,150. Pursuant to section 507(a)(5), "contributions to an employee benefit plan" are capped for such plan to the extent of "the number of employees covered by such plan multiplied by $15,150, less the aggregate amount paid to such employees under [section 507(a)(4)], plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan." The amount the Debtor seeks to pay for health insurance is under the cap under 507(a)(5).

**C.     Paid Time Off**

19.    Depending on an Employee's tenure with the Debtor, an Employee may have accrued vacation and other paid time off based upon work performed prepetition. The Debtor requests authority to honor the Employees' prepetition accrued vacation days and other paid leave in the ordinary course.

**D.     Reimbursable Business Expenses**

20.    Prior to the Petition Date and in the ordinary course of business, the Debtor reimbursed employees for valid business expenses incurred in the ordinary course of their employment. This includes expenses relating to, among other things, mileage reimbursements, cell phone reimbursements, and a variety of miscellaneous expenses (the "<u>Reimbursable Expenses</u>").

21.    To the best of the Debtor's knowledge, as of the Petition Date, no prepetition Reimbursable Expenses are pending payment. Out of an abundance of caution, however, in the event any employee applies, post-petition, for reimbursement of valid pre-petition business expenses, the Debtor seeks permission to make reimbursements to employees for valid business expenses up to $1,500 total.

22.    The Debtor seeks permission to pay reimbursements of valid prepetition business expenses, if any, of Employees, up to $1,500 total.

## VI.    RELIEF REQUESTED

23.    By this Motion, the Debtor seeks permission to (a) pay Employees for prepetition salaries earned between October 1, 2025, to October 9, 2025, in the gross amount of approximately $7,260; (b) pay the employment taxes associated with the prepetition salaries owed in the approximate amount of $820; (c) pay employee benefits in health insurance

premiums in the approximate amount of $3,022; (d) permit Employees to use, post-petition, paid time off, holidays, and sick leave days that they accrued prepetition; and (e) permit reimburse any *de minimis* prepetition reimbursable expenses incurred by Employees not to exceed $1,500 in the aggregate for all Employees.

## VII. BASIS FOR RELIEF

24. Section 507(a) of the Bankruptcy Code provides that employee compensation, subject to certain conditions, is afforded priority distribution up to $15,150. *See* 11 U.S.C. § 507(a)(4). Section 507(a)(5) of the Bankruptcy Code provides priority treatment for employee benefit plans. *See* 11 U.S.C. § 507(a)(5). Moreover, section 507(a)(4) and (5) priority claims are entitled to payment in full under a chapter 11 plan before non-priority general unsecured claims are paid. *See* 11 U.S.C. § 1129(a)(9)(B). Accordingly, as the Employees may be entitled to a priority distribution for prepetition amounts owed, the relief requested herein should primarily affect the timing of payment of employee claims rather than their treatment for distribution purposes and should neither prejudice general unsecured creditors nor materially affect the Debtor's bankruptcy estate. Indeed, absent any objection to the relief requested herein, "it would be an abuse of discretion not to grant the payment of the priority prepetition wages within the statutory limit as described in the Motion." *In re Tusa-Expo Holdings, Inc.,* No. 08-45057-DML-11, 2008 WL 4857954, *4 (Bankr. N.D. Tex. Nov. 7, 2008).

25. Additionally, under section 105(a) of the Bankruptcy Code, courts have permitted post-petition payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See id.*; *In re CoServ, L.L.C.*, 273 B.R.

487, 497 n. 17 (Bankr. N.D.Tex. 2002); *see also, In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D.La. 1989).

26. Pursuant to Sections 105(a), 363(b), and 507(a)(4) and (5) of the Bankruptcy Code and the "necessity of payment" doctrine, the Debtor seeks authority to pay the foregoing outstanding obligations owed to the Employees.

27. The continued loyalty of a debtor's workforce is a necessary component of any successful reorganization. Under the best of circumstances, the filing of a chapter 11 petition is a stressful and uncertain time for a debtor's labor force, most of whom are not familiar with the nuances that bankruptcy practitioners often take for granted. Such stress and uncertainty often cause poor employee morale at a time when a debtor needs its workforce to be most loyal. Moreover, many employees live paycheck to paycheck and will suffer immediate adverse consequences if they do not receive their full compensation.

28. The relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor. A failure by the Debtor to pay the prepetition salary and benefits may result in the loss by the Debtor of its workforce at a time when it needs them most. Consequently, it is essential to the Debtor's continued operations that its workforce receive assurance that they will receive pre-petition compensation without interruption. The Debtor submits that the total amount to be paid to the Employees is *de minimis* compared with the importance and necessity of the workforce to the Debtor. Accordingly, the relief sought herein is in the best interests of the Debtor's estate and creditors and will allow the Debtor to continue to operate its business with minimal disruption and transition smoothly into operating as debtor in possession.

## VIII. <u>WAIVER OF BANKRUPTCY RULES 6003(b) AND 6004(a) & (h)</u>

29. Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm..." FED. R. BANKR. P. 6003. For the reasons described herein, the Debtor submits that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and the estate.

30. To the extent applicable, the Debtor represents that given the emergency need for relief requested herein the Debtor seeks a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## IX. <u>LIMITED NOTICE</u>

31. Notice of this Motion has been provided to (a) the office of the United States Trustee for the Northern District of Texas, (b) the Debtor's secured lender; (c) the holders of the twenty (20) largest unsecured claims against the Debtor, and (d) parties who filed a notice of appearance, as set forth in the Certificate of Service filed herewith. Under the Bankruptcy Code, the Bankruptcy Rules, and the N.D. Tex. L.B.R., the Debtor submits that no other further notice need be provided.

## X. PRAYER

32. WHEREFORE, the Debtor respectfully requests entry of the attached proposed order granting (a) the relief requested herein and (b) such other and further relief as is just and proper.

Dated: October 10, 2025

Respectfully submitted,

*/s/ Emily S. Chou*
Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
Mary Taylor Stanberry
State Bar No. 24143781
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: emily.chou@vhh.law
blake.glatstein@vhh.law
mary.stanberry@vhh.law

PROPOSED ATTORNEYS FOR DEBTOR
AND DEBTOR IN POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via ECF electronic Notice, if available, and upon the parties listed on the attached service list via United States Mail, first class postage prepaid on October 10, 2025.

*/s/ Emily S. Chou*
Emily S. Chou

**PROPOSED ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| ECUBE LABS CO. | ) | Case No. 25-43950 |
| | ) | |
| | ) | |
| Debtor. | ) | |

On this day the Court considered the *Motion for Order Authorizing the Debtor to Pay Pre-Petition Wages, Employment Taxes, and Other Employee-Benefit Obligations* [Docket No. __] (the "<u>Motion</u>").[3]  Having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that relief is necessary to avoid immediate and irreparable harm; and based on the evidence presented and the arguments of counsel at a hearing on the Motion; the Court hereby finds that the Motion should be granted.

Accordingly, it is hereby ORDERED that:

---

[3] Capitalized terms not defined in this Order will have the same meaning given to them in the Motion.

1. The Motion **GRANTED**, and the Debtor is authorized, but not directed, to pay the obligations as described below.

2. The Debtor is authorized but not directed to pay the gross salary of the Employees for the nine (9) prepetition days of October 1, 2025, to October 9, 2025, in the gross amount of approximately $7,260 from which ADP will withhold the appropriate taxes and such amounts as designated by the Employees or judicial authorities and remit same to relevant parties.

3. The Debtor is authorized to pay the employment taxes associated with the pre-petition salaries in the approximately amount of $820.

4. The Debtor is authorized to pay the health insurance premium for the month of October of approximately $3,022.

5. The Debtor is authorized to reimburse business expenses incurred by the Employees prepetition up to an aggregate amount as to all of the Employees of $1,500.

6. No single Employee shall receive more than $15,150 for prepetition salaries.

7. The Employees are permitted to use, post-petition, paid time off, holidays, and sick leave days that they accrued prepetition.

8. The authorizations given to the Debtor in this Order empower but do not direct the Debtor to effectuate the payments herein. The Debtor retains the business judgment to make or not make said payments, and in all instances subject to the condition that funds are available to make any payment.

9. Nothing herein shall be deemed an assumption or adoption by the Debtor of any agreements or policies providing for employer obligations to the Employees.

10. Notwithstanding anything to the contrary in this Order or the Motion, any payment, obligation, or other relief authorized by this Order shall be subject to the terms,

conditions, and limitations of this Court's subsequent order approving any cash collateral use, to the extent any such order is entered.

11. The Debtor has established that the relief granted herein is necessary to avoid immediate and irreparable harm as required by Bankruptcy Rule 6003.

12. The fourteen (14) day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

13. This Court shall retain jurisdiction over any and all matters arising from or related to the implementation of this Order.

### END OF ORDER ###