Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
Mary Taylor Stanberry
State Bar No. 24143781
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: emily.chou@vhh.law
　　　　blake.glatstein@vhh.law
　　　　mary.stanberry@vhh.law

PROPOSED ATTORNEYS FOR DEBTOR
AND DEBTOR IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| ECUBE LABS CO. | ) | Case No. 25-43950 |
| | ) | |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S OMNIBUS MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE ASSUMPTION OF EIGHT HAULER AGREEMENTS, AND (II) ESTABLISH THE CURE AMOUNTS ASSOCIATED WITH THE EIGHT HAULER AGREEMENTS**

Ecube Labs Co. ("Ecube" or the "Debtor"), as debtor-in-possession, files *Debtor's Omnibus Motion for Entry of Order (I) Authorizing the Assumption of Eight Hauler Agreements, and (II) Establish the Cure Amounts Associated with the Eight Hauler Agreements* (the "Motion"). By the Motion, the Debtor seeks to assume eight executory contracts as identified in **Exhibit A** attached.

**JURISDICTION AND VENUE**

1.　The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This case and all related matters have been referred to this Court pursuant to 28 U.S.C. § 157. This Motion

constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and other predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 365 and Bankruptcy Rules 6004(h) and 6006.

## PROCEDURAL BACKGROUND

4. On October 10, 2025 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code.

5. The Debtor continues to manage and operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this case.

## REQUEST FOR APPROVAL TO FILE AN OMNIBUS MOTION UNDER RULE 6006

6. Under Rule 6006(e), the Debtor may not seek authority to assume multiple executory contracts in one motion unless "the court otherwise authorizes the motion to be filed." Fed. R. Bankr. P. 6006(e). When the Court authorizes the Debtor to seek assumption of multiple executory contracts in one motion, the Debtor is required to: (1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts listed in the motion; (2) list parties alphabetically and identify the corresponding contract; (3) specify the terms, including the curing of defaults, for each requested assumption; (4) specify the terms of reach requested assignment; (5) be consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and (6) be limited to no more than 100 executory contracts or unexpired leases. *See* Fed. R. Bankr. P. 6006(f).

7. The Debtor has good cause to assume multiple executory contracts in one motion for judicial efficiency and conserve the Debtor's resources because the eight executory contracts the Debtor seeks to assume in this Motion are similar in nature and the argument for their

2

assumption is identical. Therefore, requiring the Debtor to file eight separate motions with identical argument would be inefficient for both the Debtor and the Court.

8. Additionally, this Motion complies with the requirements of Rule 6006. Exhibit A, attached to the Motion and identified in the Motion's introduction, states in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts listed in the motion; lists parties alphabetically and identify the corresponding contract, and specifies the terms for each requested assumption. The Motion also discusses the contracts and the terms of the assumption in greater detail. The contracts are not being assigned, no other omnibus motions exist to number consecutively, and this Motion does not include more than 100 executory contracts.

9. Accordingly, in addition to the substantive relief sought in the Motion, the Debtor respectfully requests the Court to allow the Debtor to seek authority to assume multiple executory contracts in this omnibus Motion.

## BACKGROUND

**A.  About the Debtor**

10. The Debtor is a Delaware corporation. The Debtor brokers waste management services for the commercial sector. It connects local businesses with local waste haulers.

11. Unlike traditional waste management companies, the Debtor does not have its own fleet of dump trucks, a pool of drivers as employees, or boots-on-the-ground salespeople across the country. The Debtor maintains a small staff of office employees for administrative and back-office tasks, the Debtor contracts with third-party staffing agencies to staff the company's remote sales and customer service teams, and the Debtor contractually engages independent and primarily small-business waste haulers local to the Debtor's customers to provide waste pickup services. As of the Petition Date, the Debtor has grown its business to thousands of customers.

B.   **The Hauler Agreements**

12. As described above, the Debtor engages third-party haulers ("Independent Haulers") to provide waste pickup for its customers.

13. With a few exceptions, the Independent Haulers consist of small businesses with limited resources. Each of the Independent Haulers entered a "Hauler Agreement" with the Debtor to govern the terms of the parties' relationship. There are a few different forms of the Hauler Agreement, but the terms are substantially similar among the forms.

14. As of the Petition Date, the Debtor is actively engaged with almost 50 Independent Haulers, and nearly all the Independent Haulers are owed payment by the Debtor for services provided prepetition.

15. The Independent Haulers are the lifeblood of the Debtor's business. One of the primary reasons the Debtor can offer services to its customers at a lower price than the larger traditional waste management companies is through the use of the Independent Haulers to service customers local to the haulers. Under this business model, overhead is reduced for both the Debtor and the Independent Haulers, and the customers enjoy the benefits of a lower price as compared to the larger traditional waste management companies.

16. A few of the Independent Haulers are irreplaceable for the Debtor's business because no other local hauler can service some of the Debtor's customers' specific locations and for the prices the Debtor is paying. The Debtor has worked tirelessly over the years to negotiate the lowest prices with local haulers to save its customers more money and maximize its margins.

17. With this subset of Independent Haulers, the Debtor's business would be irreparably harmed if these small businesses stopped performing on their executory contracts. While the Debtor could seek to compel performance, a large amount of the Debtor's customers would terminate their customer agreements with the Debtor for competitors' waste services if the

Debtor missed even one week's waste pickup services. The Debtor's customers rely on the Debtor's consistency of service through its Independent Haulers.

18. Furthermore, the Debtor wants to avoid having to potentially compel performance of executory contracts from its Independent Haulers because (a) the costs to compel contracts it intends to assume during the pendency of the bankruptcy would only waste the Debtor's resources unnecessarily, and (b) the Debtor wants to minimize the disturbance to its working relationship with these Independent Haulers that critically rely on the Debtor's payments to cover expenses for relatively small businesses with limited resources.

## RELIEF REQUESTED AND BASIS FOR RELIEF

19. By this Motion, the Debtor seeks authority to assume eight (8) Hauler Agreements (the "Assumed Hauler Agreements"). The eight Hauler Agreements to be assumed and the cure cost associated with each agreement are identified in Exhibit A attached.

20. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."[1] "The usual test for the assumption or rejection of an executory contract is whether assumption or rejection meets the 'business judgment test'."[2] The business judgment test is not a strict standard, but merely requires "a showing that [assumption] will be advantageous to the estate and the decision be based on sound business judgment."[3] Indeed, "[a]s long as assumption . . . appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to assume

---

[1] 11 U.S.C. § 365(a).

[2] *In re Mirant Corp.*, 348 B.R. 725, 743 (Bankr. N.D. Tex. 2006); *see also Richmond Leasing Co. v. Cap. Bank, NA*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Idearc, Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009); *In re Wolflin Oil, LLC*, 318 B.R. 392, 396 (Bankr. N.D. Tex. 2004) ("[A]ssumption must represent 'a proper exercise of business judgment.'" (quoting *Richmond Leasing*, 762 F.2d at 1309)).

[3] *In re Idearc*, 423 B.R. at 162 (alteration added).

5

. . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code."[4]

21. Here, the assumption of the Assumed Hauler Agreements is important to the stability of the Debtor's business and for a successful reorganization. These eight Independent Haulers (collectively, the "Eight Haulers") represent haulers that service areas in which the Debtor cannot easily, or there are no other viable options, to replace. Therefore, in exercising good-faith business judgment, the Debtor believes the preservation of a good relationship with these Eight Haulers is integral to the stability of the Debtor's operations and its very restructuring viability.

22. If there has been a default in an executory contract a debtor seeks authority to assume, the debtor must, in addition to satisfying the business judgment test, meet additional requirements set forth in section 365(b)(1) of the Bankruptcy Code before assumption will be permitted. Specifically, section 365(b)(1) provides:

> If there has been a default in an executory contract . . . of the debtor, the [debtor] may not assume such contract . . . unless, at the time of assumption of such contract . . ., the [debtor]—
>
> (A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . .;
>
> (B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract . . ., for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract . . . .

11 U.S.C. § 365(b)(1) (alteration added).

23. Prior to filing this Motion, the Debtor reached out to each of the Eight Haulers to

---

[4] *Richmond Leasing*, 762 F.2d at 1309 (quoting *Allied Tech., Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982)); *accord In re Idearc*, 423 B.R. at 162 ("In the absence of a showing of bad faith or an abuse of business discretion, the debtor's business judgment will not be altered.").

confirm the cure cost for each of the Hauler Agreements to be assumed. The Debtor therefore submits that the cure costs, as stated in Exhibit A, represent the correct amount needed to cure, and the payment of such cure amounts will facilitate the assumption of the Hauler Agreements with the Eight Haulers.

24. Because the Eight Haulers are an indispensable part of the Debtor's operations as they service particular areas that the Debtor has little other options to find replacement haulers at or near the costs of these negotiated Assumed Hauler Agreements, the Debtor seeks the assumption of the Assumed Hauler Agreements of the Eight Haulers at this early juncture in the case because it cannot afford to risk these haulers refusing to work with the Debtor.

25. While the Independent Haulers would not be permitted to stop providing service on account of pre-petition debt owed as a counterparty to an executory contract, these Eight Haulers present a real risk they would simply stop providing services to the Debtor and its customers because the Eight Haulers are small businesses for the most part and unfamiliar with the bankruptcy process. As previously explained, the Debtor may have the legal right to seek to compel continued performance, but the gap in services to the Debtor's customers would result in the Debtor losing significant customers altogether and create irreparable reputational harm to the Debtor.

26. Rather than risking the loss of customers and tarnish the Debtor's reputation of being able to service its customers, in the exercise of its good-faith business judgment, the Debtor believes the assumption of the Assumed Hauler Agreements are in the best interests of the Debtor's operations and viability and thus in the best interest of the estate and creditors.

**REQUEST FOR WAIVER OF STAY**

27. Pursuant to Bankruptcy Rule 6004(h), the Debtors seek a waiver of any stay of the effectiveness of an order granting this Motion, to the extent that it applies to the relief requested in

this Motion.

## NOTICE

28.	Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the Eight Haulers; (iii) the holders of the twenty (20) largest unsecured claims against the Debtor; and (iv) parties requesting notice; all as set forth below.  The Debtor submits that no further notice need be provided.

The Debtor respectfully requests that the Court grant the relief requested in this Motion and such other and further relief as may be just and proper.


Dated: November 11, 2025				Respectfully submitted,


					*/s/ J. Blake Glatstein*
					Emily S. Chou
					State Bar No. 24006997
					J. Blake Glatstein
					State Bar No. 24123295
					Mary Taylor Stanberry
					State Bar No. 24143781
					**VARTABEDIAN HESTER & HAYNES LLP**
					301 Commerce Street, Suite 2200
					Fort Worth, Texas 76102
					Tel: 817-214-4990
					Email:  emily.chou@vhh.law
					            blake.glatstein@vhh.law
					            mary.stanberry@vhh.law

					PROPOSED ATTORNEYS FOR DEBTOR
					AND DEBTOR IN POSSESSION

## **CERTIFICATE OF SERVICE**

   I certify that on November 11, 2025, a true and correct copy of the foregoing document was served upon the office of the United States Trustee for the Northern District of Texas, the parties that have filed a notice of appearance via the Court's electronic filing (ECF) system, and the parties listed below by electronic mail, and the holders of the twenty (20) largest unsecured claims against the Debtor and the addresses reflected on the attached Service List via United States Mail first-class prepaid postage.

               */s/ J. Blake Glatstein*
               J. Blake Glatstein


Carolina Waste Group
malorie.campbell@carolinawastegroup.com
adam.thorsen@carolinawastegroup.com

Coastal Waste Recycling, Inc.
casher@coastalwasteinc.com

Fusion Recycling LLC
angelia@fusionwaste.com
martin@fusionwaste.com
cisco@fusionwaste.com

GFL Holdco (US), LLC
sapple@gflenv.com
se.na.collections@gflenv.com

Recycling Services of Florida, Inc. (a/k/a Midwest Paper Retriever
ahanold@recyclingit.com

Rio Grande Waste Services, Inc.
cheryl@riograndewaste.com
michael@riograndewaste.com

Texas Pride Disposal
phattaway@texaspridedisposal.com
jscarano@texaspridedisposal.com

Universal Waste Systems, Inc.
ryanodonnell@uwscompany.com

## Exhibit A

| Agreement | Counterparty to Agreement | Proposed Cure |
|---|---|---:|
| Feb. 8, 2024 Hauler Agreement | Carolina Waste Group | $88,827.64 |
| Mar. 18, 2022 Hauler Agreement | Coastal Waste & Recycling Inc. | $76,869.20 |
| June 4, 2024 Hauler Agreement | Fusion Recycling LLC | $33,175.77 |
| Nov. 1, 2024 Hauler Agreement | GFL Holdco (US), LLC | $23,337.78 |
| Oct. 26, 2022 Hauler Agreement | Recycling Services of Florida, Inc. (a/k/a Midwest Paper Retriever) | $6,167.86 |
| Aug. 8, 2023 Hauler Agreement | Rio Grande Waste Services, Inc. | $55,165.14 |
| Apr. 22, 2020 Hauler Agreement | Texas Pride Disposal | $158,085.50 |
| June 21, 2022 Hauler Agreement | Universal Waste Systems Inc. | $114,986.84 |