Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
Mary Taylor Stanberry
State Bar No. 24143781
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Emails:
emily.chou@vhh.law
blake.glatstein@vhh.law
mary.stanberry@vhh.law

PROPOSED ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| ECUBE LABS CO., | § | Case No. 25-43950-mxm |
| | § | |
| Debtor. | § | |
| | § | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING THE DEBTOR TO OBTAIN SECURED POST-PETITION
FINANCING, (II) SCHEDULING A FINAL HARING,
AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

Ecube Labs Co. ("Ecube" or the "Debtor"), as debtor and debtor-in-possession in the above-styled bankruptcy case (the "Bankruptcy Case" or "Case"), files this *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Post-Petition Financing, (II) Scheduling a Final Hearing, and (III) Granting Related Relief* (the "Motion"). In support of its Motion, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT AND BANKRUPTCY RULE 4001 SUMMARY

1.      By this Motion, the Debtor seeks, *inter alia*, to enter into post-petition financing for a line of credit for the maximum aggregate principal amount of $1,500,000 (the "DIP Facility") pursuant to the terms and conditions set forth in the Debtor-In-Possession Term Loan Facility term sheet (the "DIP Term Sheet") with Ecube Labs Co., Ltd., the Debtor's proposed DIP lender (the "DIP Lender"), attached hereto as **Exhibit A**.

2.      The Debtor believes that the proposed DIP Facility represents significantly better-than-market terms to the Debtor, including a favorable interest rate, no fees, and no scheduled interest or principal payments until the effective date of a Plan, sale of substantial all of the assets of the Debtor, and other conditions as set forth in the DIP Term Sheet and definitive loan documents to be executed.

3.      The DIP Facility is vital to maintaining the Debtor's ongoing operations. In light of the Debtor's current economic circumstances, there is no replacement financing available to the Debtor, and certainly no replacement financing available under better terms. Without the DIP Lender's willingness to infuse new capital into a struggling business, the Debtor would be forced to entirely cease operations.

4.      Subject to approval of the Court, the Debtor has executed the DIP Term Sheet which is a binding commitment from the DIP Lender to provide the post-petition financing pursuant to the terms and conditions set forth in the DIP Term Sheet, which shall be incorporated into a more formal instrument and hereafter be referred to as the DIP Facility into which the Debtor shall enter upon the Court's entry of the proposed interim order attached hereto as **Exhibit B** (the "Interim Order")

5. In accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the following table summarizes the material terms of the Interim Order attached hereto:

| Summary of Material Terms | |
|---|---|
| **DIP Facility Parties** | Borrower: the Debtor<br><br>DIP Lender: Ecube Labs Co., Ltd. |
| **Facility Amount** | Up to $1,500,000.<br><br>Interim Authorization: up to $500,000. |
| **Term** | The DIP Facility will terminate on the earlier of twelve (12) months after origination, effective of a plan, consummation of a sale of substantially all of the Borrower's assets under section 363 of the Bankruptcy Code, Borrower's filing of a motion seeking to dismiss or convert to chapter 7, entry of an order converting the case to chapter 7, or for appointment of a trustee. |
| **Use of Proceeds** | General working capital and administrative expenses of the Bankruptcy Case, including professional fees. |
| **Interest Rate** | The greater of:<br><br>(1) Prime Rate (defined below) plus two and three quarters percent (2.75%) per annum (such interest rate will adjust with Prime Rate), *or*<br>(2) Six percent (6%) per annum.<br><br>"Prime Rate" shall mean the prime rate of interest as quoted in the most recently published issue of Wall Street Journal (Central Edition) under the "Money Rates" table. |
| **Default Rate** | +6% above the applicable Interest Rate, or maximum allowed by law, whichever is greater.<br><br>The Default Rate shall automatically accrue from and after the occurrence and continuance of any Event of Default in the definitive loan documents. |
| **Maturity Date** | Whichever is earlier of (1) effective date of plan for reorganization, (2) sale of substantially all assets, (3) |

| | |
|---|---|
| | alternative DIP financing secured, or (4) an uncured Event of Default. |
| **Event of Default** | If the Loan shall not have the priority conptemplated by the Term Sheet<br><br>Unauthorized disbursement.<br><br>Sale of substantially all assets without consent of DIP Lender<br><br>Conversion to chapter 7<br><br>** Debtor is allowed 30 days to cure any Event of Default |
| **Loan Fees** | No fees.<br><br>No penalty for early payment. |
| **Expenses** | Borrower shall be responsible for all reasonable fees, costs and expenses of Lender up to $10,000, including any and all expenses of Lender's counsel and shall reimburse such amounts promptly upon demand; any additional fees, costs and expenses of Lender in excess of $10,000 shall be due upon repayment or maturity. |
| **Covenants** | Loan documents to be prepared on entry of Interim Order; however, DIP Lender will advance up to $500,000 during the interim period upon entry of the Interim Order. |
| **Priority, Liens, Collateral**<br><br><br><br>**Interim Order**<br><br>**¶5 Superpriority Administrative Claim** | A lien against all assets of the Borrower.<br><br><br><br>For all borrowings under the DIP Facility, the DIP Lender is granted an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "Superpriority DIP Claim"), having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, whether now in existence or incurred by the Debtor after the Petition Date, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 331, 503(b), 507(a), 364(c)(1), 564(c), 726 or 1114 of the Bankruptcy Code, provided, however, that the Superpriority DIP Claim shall be subject only to the DIP Liens and the Carve-Out. |

| Interim Order<br><br>¶4 Security for DIP Loan | Pursuant to section 364(c) of the Bankruptcy Code, DIP Lender shall be, and hereby is granted, effective immediately upon entry of this Interim Order, valid and perfected security interest and liens in all of the assets of the Debtor, except for causes of action pursuant to chapter 5 of the Bankruptcy Code and any recoveries from the pursuit thereof, as set forth in this Interim Order and the Term Sheet (the "DIP Collateral") to secure the DIP Obligations.<br><br>The DIP Liens against the DIP Collateral shall be, and hereby are determined to be perfected without the need for the execution or filing of any future document or instrument otherwise required to be executed or filed under applicable non-bankruptcy law. |
|---|---|
| Interim Order<br><br>¶ 9 Carve-Out | Notwithstanding any other provision of this Order, the DIP Loan Documents, the DIP Liens and the Superpriority DIP Claim granted to the DIP Lender pursuant to this Interim Order all are subject to a carve-out of funds (hereinbefore and hereinafter, the "Carve-Out") for the following administrative expenses: (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to section 1930(a) of Title 28, United States Code; and (b) all fees and expenses of the Debtor's bankruptcy counsel in an amount not to exceed $450,000. |
| Interim Order<br><br>¶ 10 Automatic Perfection of DIP Liens | This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, validity, and enforceability of the DIP Liens upon the DIP Collateral granted to the DIP Lender as set forth in this Interim Order, the Term Sheet, and the DIP Loan Documents.  The DIP Lender shall not be required to file any financing statement, mortgage, deed of trust, assignments of rents, notice of lien, and/or any similar documents or take any other action (including possession of any of the DIP Collateral) in order to validate the perfection of the DIP Liens. |

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the Northern District of Texas, Fort Worth

Division (the "Court") has jurisdiction of the Bankruptcy Cases and this Motion under 28 U.S.C.

§ 1334.  This Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 & 1409.

## BACKGROUND

### A.    Procedural Background

7.    On October 10, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Court, commencing the Bankruptcy Case.

8.    The Debtor is operating its business and managing its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.    No request for the appointment of a trustee or examiner has been made in this Bankruptcy Case, and no committees have been appointed or designated.

### B.    About the Debtor

10.    The Debtor is a Delaware corporation.  The Debtor is engaged in and provides waste management services for the commercial sector.

11.    Unlike traditional waste management companies, the Debtor does not have its own fleet of dump trucks, a pool of drivers as employees, or boots-on-the-ground salespeople across the country.  The Debtor maintains a small staff of office employees for administrative and back-office tasks, the Debtor contracts with third-party staffing agencies to staff the company's remote sales and customer service teams, and the Debtor contractually engages independent, small-business trash haulers local to the Debtor's customers to provide waste pickup services. In simple terms, the Debtor connects local businesses with local waste haulers. As of the Petition Date, the Debtor has grown its business to thousands of customers.

12.  In April 2024, the Debtor was sued by competitor entities El Paso Disposal, LP, Waste Connections of Texas, LLC, and Waste Connections Lone Star, Inc. (the "WC Action"). El Paso Disposal, LP, Waste Connections of Texas, LLC, and Waste Connections Lone Star, Inc. (collectively, "Waste Connections")[1] are related entities to Waste Connections, Inc., one of the largest waste management companies in the world.  Waste Connections alleges that the Debtor committed, among other things, computer fraud and abuse, trade secret misappropriation, and common law fraud.  The lawsuit was filed in the United States District Court for the Western District of Texas, El Paso Division.

13.  As of the Petition Date, discovery was ongoing in the WC Action.  The defense cost has taken a heavy toll on the Debtor's economic condition.  The Debtor's financial health has deteriorated to such an extent that the Debtor struggles to meet its business operational needs on a daily basis.

14.  Consequently, the Debtor is in dire need for post-petition financing to provide critical working capital to stabilize the Debtor's operations for a chance at reorganization.

C.    **Disclosures Regarding the DIP Lender**

15.  On October 24, 2025, the Debtor filed the *List of Equity Security Holders* [Dkt. No. 37] in which it identified Ecube Labs Co., Ltd. as the Debtor's 100% parent, holding 100% of the outstanding shares of the Debtor's common stock.

16.  As set forth above, Ecube Labs Co., Ltd. is also the proposed DIP Lender.

---

[1] In March 2025, Waste Connections amended its Complaint to add Waste Connections US, Inc., another Waste Connections' entity. Therefore, "Waste Connections" also collectively refers to Waste Connections US, Inc.

## <u>RELIEF REQUESTED</u>

17.     By this Motion, the Debtor seeks authority to borrow money on a post-petition basis pursuant to the terms of the DIP Facility to be approved on interim and then final basis. The terms of the DIP Facility are outlined in the DIP Term Sheet and the Rule 4001 summary in paragraph 5 of this Motion.

18.     Debtor specifically requests entry of the Interim Order and a final order (the "<u>Final Order</u>") providing for, among other things:

(a)     authorizing the Debtor to obtain secured post-petition financing from the DIP Lender in the aggregate principal amount of $1,500,000.00;

(b)     authorizing the Debtor to enter into, execute, deliver, and perform under the DIP Facility and all related agreements or documents creating, evidencing, or securing indebtedness or obligations of the Debtor to the DIP Lender described in the DIP Facility;

(c)     approving the terms and conditions of the DIP Facility;

(d)     granting valid, enforceable, non-avoidable, and automatically fully perfected liens on, and security interests in, the DIP Collateral to secure the borrowings under the DIP Facility pursuant to section 364(c) of the Bankruptcy Code;

(e)     granting allowed superpriority administrative claims to the DIP Lender with respect to the borrowings under the DIP Facility pursuant to section 364(c)(1) of the Bankruptcy Code;

(f)     waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of the Interim Order;

(g)     finding the DIP Lender a "good faith" lender pursuant to section 364(e) of the Bankruptcy Code and granting all protections afforded therein;

(h)     scheduling a final hearing within twenty-one (21) days from entry of the Interim Order and approving notice with respect thereto in accordance with Bankruptcy Rule 4001(c); and

(i)     entering the Final Order approving the relief granted in the Interim Order.

19.     An immediate and critical need exists for the Debtor to obtain funds in order to continue the operations of its business.  At this time, the ability of the Debtor to finance its operations through the incurrence of new indebtedness is vital to the preservation and maintenance of its going-concern value.  The use of the DIP Facility is vital, necessary, and critical to the Debtor's ongoing operations.  The Debtor's ability to preserve its relationship with employees, salesforce, contract haulers, vendors and suppliers, and customers, and to otherwise finance its operations, is essential to the Debtor's continued viability.

20.     Absent the relief requested by this Motion, the Debtor faces a material and certain risk of substantial, irreparable harm.  On the other hand, access to the DIP Facility will ensure the Debtor has sufficient funds to preserve and maximize the value of its estate, and to responsibly administer this Bankruptcy Case.

## BASIS FOR RELIEF REQUESTED

**A.     The Debtor Should Be Authorized to Obtain Post-Petition Financing.**

21.     The Court should approve the DIP Term Sheet summarizing the DIP Facility as an exercise of the Debtor's good faith sound business judgment in the best interest of the Debtor's estate and its creditors.

22.     The statutory requirement for obtaining post-petition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code.  Specifically, courts look to whether: (i) the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code; (ii) the credit

transaction is necessary to preserve the assets of the estate; and (iii) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lender. *See In re Ames Dep't Stores*, 115 B.R. 34, 37-40 (Bankr. S.D.N.Y. 1990).

23. Provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying the Bankruptcy Code, courts routinely grant debtors considerable deference in acting in accordance with their sound business judgment in obtaining such credit. *See In re Estrada*, 16-80003-G3-11, 2016 WL 745536, at *3 (Bankr. S.D. Tex. Feb. 24, 2016) ("In determining whether to approve a motion to obtain credit, courts generally permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties."); *In re Barbara K. Enters., Inc.*, Case No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party- in-interest").

24. The Debtor has explored alternative sources of financing to address its liquidity constraints. Based on the Debtor's efforts to find potential new funding sources, the Debtor has determined that the DIP Facility presents the most economically viable mechanism for providing the liquidity that the Debtor requires to continue its operations as it attempts restructuring. Absent approval of the currently proposed DIP Facility, the Debtor will have little hope for reorganization.

The Debtor believes that it is in the best interests of its business, creditors, and other parties-in-interest to enter into the proposed DIP Facility to maintain its operations and preserve its business value.

25.     While the DIP Lender is an insider of the Debtor there is no prohibition under the Bankruptcy Code for insiders to provide financing. *See In re Utah 7000, L.L.C.*, 2008 Bankr. LEXIS 4276 *, Case No. 08-21869 (Bankr. D.Utah July 3, 2008) (Court authorizing postpetition financing on a superpriority, secured, and priming basis notwithstanding postpetition lender is controlled by an insider of some of the debtors, and the Court declined to adopt the requirement of a heightened standard of proof where a proposed financing is from an insider).

26.     The DIP Facility offered by the DIP Lender does not include the various fees that are typically charged on the market by lenders.  The Debtor believes alternative financing options from third parties would prove to be much more economically burdensome to the Debtor and the estate.  The proceeds of the DIP Facility will be used (a) for working capital and general corporate purposes of the Debtor; (b) to pay fees and expenses related to the DIP Facility and the administration of this Case; and (c) to pay fees mandated by the Bankruptcy Code and estate professionals (subject to Court approval).  Attached as **Exhibit 2** to the proposed Interim Order is a 13-Week Budget to show the Debtor's intended use of the borrowed funds.

27.     Under the particular circumstances of this Case, these are the only terms under which the DIP Lender will provide the financing. As the DIP Facility proceeds are necessary and the Debtor could not find financing with better terms at this time, the Debtor believes that sufficient justification exists for agreeing to the terms of the Term Sheet.

28.     Accordingly, the Debtor believes obtaining the DIP Facility upon the terms provided in the DIP Term Sheet is an exercise of good faith sound business judgment in that the

DIP Facility provides more economically favorable terms than financing from third parties. Thus, the Debtor submits that entering into the DIP Facility and the DIP Facility documents to be prepared, constitutes an exercise of good faith sound business judgment that should be approved by the Court.

**B.      The Debtor Should be Authorized to Obtain Postpetition Financing Under Section 364(c)**

29.      Section 364 of the Bankruptcy Code authorizes a debtor to obtain, in certain circumstances, postpetition financing on a secured or superpriority basis, or both. Specifically, section 364(c) of the Bankruptcy Code provides, in pertinent part, that the Court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code to obtain credit or incur debt:

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code];

(2) secured by a lien on property of the estate that is not otherwise subject to a Lien, or

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

30.      To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.*; *see also Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 584 (S.D.N.Y. 2001) (superpriority administrative expenses authorized where the debtor could not obtain credit as an administrative

expense). When few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n. 4 (N.D. Ga. 1989); *see also Ames Dep't Stores*, 115 B.R. at 40 (approving financing facility and holding that the debtor made reasonable efforts to satisfy the standards of section 364(c) where it approached four lending institutions, was rejected by two, and selected the more favorable of the two offers it received).

31.     The Debtor has looked into and has been unable to obtain postpetition financing in the form of unsecured credit.

32.     The Debtor needs the funds to be provided under the DIP Facility to preserve the value of its estate for the benefit of all creditors and other parties in interest. Absent the DIP Facility, the Debtor will be unable to operate its business or prosecute its Bankruptcy Case, which will eliminate any hope of reorganization.  The DIP Facility will provide the Debtor with necessary liquidity to allow the Debtor to maintain its operations and preserve value in the best interest of all stakeholders of the estate.

33.     The Debtor submits the terms of the DIP Facility are reasonable and adequate to ensure the Debtor's ongoing ability to operate in chapter 11. Accordingly, the Debtor requests that the Court (a) authorize the Debtor to grant the DIP Lender liens on the DIP Collateral as provided in section 364(c); and (b) grant the DIP Lender superpriority administrative expense status for the borrowings under the DIP Facility as provided for in section 364(c)(1) of the Bankruptcy Code.

**C.     The DIP Lender Should be Deemed a Good Faith Lender under Section 364(e) of the Bankruptcy Code.**

34.     Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the

authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Specifically, section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e)

35.     The Debtor has fully disclosed that the DIP Lender is the Debtor's 100% parent.

36.     As explained hereinabove, the DIP Facility is the result of the Debtor's reasonable and informed determination that the DIP Lender offered the terms of the DIP Facility in good faith as the terms represent at least as good as, or better, economic terms than those that may be provided by a third-party lender.  The terms and conditions of the DIP Facility are fair and reasonable, and the proceeds under the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code. Further, no consideration is being provided to any party to the DIP Facility other than as described herein.

37.     Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and is entitled to all of the protections afforded by that section.

**D.      The Debtor Requires Immediate Access to the DIP Facility**

38.     The Court may grant interim relief in respect of a motion filed pursuant to section 363(b) or 364 of the Bankruptcy Code where, as here, interim relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." FED. R. BANKR. P. 4001(c)(2).

---

39.     The Debtor and its estate will suffer immediate and irreparable harm if the interim relief requested herein is not granted promptly. An extended delay in obtaining the DIP Facility jeopardizes the Debtor's ability to maintain normal operations at the risk of causing significant harm to the Debtor's estates and creditors.

### REQUEST FOR FINAL HEARING

40.     Pursuant to Bankruptcy Rules 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing and set a deadline for filing objections to the Motion prior to the Final Hearing.

### WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

41.     For all of the reasons set forth above, prompt entry of the Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's estate and is consistent with and warranted under Bankruptcy Rule 4001(c)(2).  In addition, to implement the terms of the DIP Facility, the Debtor requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h) or otherwise so that the Interim Order may be immediately effective and enforceable upon entry

### NOTICE

42.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee; (b) the holders of the twenty (20) largest unsecured claims against the Debtor; (c) secured creditors of the Debtor, if any; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION AND RESERVATION OF RIGHTS

43.     For all of the reasons set forth above, prompt entry of the Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's estate and is consistent with and warranted under Bankruptcy Rule 4001(c)(2).

WHEREFORE, the Debtor respectfully requests that the Court enter an interim order substantially in the form attached hereto (i) granting this Motion; (ii) authorizing the relief requested above; (iii) set a final hearing on the Motion, and (iv) granting the Debtor such other and further relief to which they may show themselves justly entitled.

Dated: November 11, 2025

Respectfully submitted,

**VARTABEDIAN HESTER & HAYNES LLP**

By: */s/ Emily S. Chou*
Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
Mary Taylor Stanberry
State Bar No. 24143781
**VARTABEDIAN  HESTER  &  HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Emails:
emily.chou@vhh.law
blake.glatstein@vhh.law
mary.stanberry@vhh.law

*Proposed Attorneys for the Debtor and Debtor-in-Possession*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon the parties listed on the attached service list via United States Mail, first class postage prepaid, or via ECF electronic Notice, if available, on November 11, 2025.


_/s/ Emily S. Chou_
Emily S. Chou