**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ECUBE LABS CO., | § | Case No. 25-43950-mxm |
| | § | |
| Debtor. | § | |
| | § | |

**INTERIM ORDER GRANTING DEBTOR'S MOTION FOR INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN SECURED POST-PETITION
FINANCING; (II) SCHEDULING A FINAL HEARING; AND (III) GRANTING
RELATED RELIEF**

Came on for consideration the *Motion for Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Post-Petition Financing; (II) Scheduling a Final Hearing; and (III) Granting Related Relief* [Docket No. __] (the "Motion") filed by Ecube Labs Co., the debtor in possession in the above captioned chapter 11 bankruptcy case.

The Court having considered, on an interim basis, the aspects of the Motion and the exhibits attached thereto, and in accordance with Bankruptcy Rule 4001(c), due, proper and adequate notice of the Motion appropriate to the circumstances presented having been given, and an interim

hearing having been held on _____, 2025 ("Interim Hearing"), and the Court having heard arguments of counsel, the testimony proffered and other evidence presented at the Interim Hearing; and after due and deliberate consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

A.       On October 10, 2025, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").  The Debtor is operating its business and managing its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed in this case.

B.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief granted herein are section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c).  Venue of this Chapter 11 proceeding and the Motion is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

C.       The Debtor's business requires additional working capital on an immediate basis inasmuch as the Debtor has determined, in its business judgment, that it is unable to operate generally without obtaining post-petition financing.  Without obtaining financing on a post-petition basis, the Debtor will not be able to pay its operating expenses so that it may continue operating to preserve and maintain the value of its assets.

D.       Ecube Labs Co., Ltd. has agreed to provide a postpetition debtor in possession credit facility ("DIP Facility") to the Debtor pursuant to the terms on the term sheet ("Term Sheet") attached hereto as **Exhibit 1**.  Reference is here made to the Term Sheet for all purposes, and the terms thereof are incorporated herein.

E.       Subject to more detailed provisions of the Term Sheet, the terms of the DIP Facility

are summarized as follows.  Capitalized terms that are not otherwise defined have the meanings given to them in the Term Sheet.

(i)     Borrower.  Ecube Labs Co.

(ii)    Facility Amount.  Up to the amount of $1,500,000.00 subject to the entry of a Final Order.  However, upon the entry of this Interim Order, the Debtor may immediately borrow up to the sum of $500,000.00.  The DIP Lender agrees to advance interim borrowing based upon the Term Sheet upon entry of the Interim Order with the DIP Loan Documents to be prepared on entry of the Interim Order.

(iii)   Use of Proceeds.  The Debtor may use the proceeds of the DIP Facility to fund its working capital needs and administrative expenses of the bankruptcy estate, including professional fees.

(iv)    Interest Rate.  The DIP Loan will accrue interest at the greater of (a) the Prime Rate (as defined below) plus two and three quarters percent (2.75%) per annum, and such Interest Rate will be adjusted with fluctuation in the Prime Rate, or (b) six percent (6%) per annum.  The "Prime Rate" shall mean the prime rate of interest as quoted in the most recently published issue of The Wall Street Journal (Central Edition) under the "Money Rates" table.

(v)     Default Rate.  A default interest rate ("Default Rate") will be applied at an additional 6% above the then applicable non-default interest rate, or maximum rate allowed by law, whichever is greater.  The Default Rate shall automatically accrue from and after the occurrence and continuance of any

Event of Default in the definitive loan documents.

(vi)    Term.  The Facility shall terminate on the earlier of one (1) year after origination, effective date of a plan, consummation of a sale of substantially all of the Borrower's assets under section 363 of the Bankruptcy Code, Borrower's filing of a motion seeking to dismiss or convert to chapter 7, entry of an order converting the case to chapter 7 or for appointment of a trustee.

(vii)   Maturity Date.  Whichever is earlier of (a) effective date of a confirmed plan of reorganization, (b) sale of substantially all assets of the Debtor, (c) alternative DIP financing secured from another party, or (d) an uncured event of default.

(viii)  Events of Default.  The following shall constitute events of default of the DIP Facility:  (a) if the DIP loan shall not have the priority contemplated by the Term Sheet; (b) unauthorized disbursement; (c) sale of substantially all of the assets of the Debtor without consent of the DIP Lender; (d) conversion of the Debtor's chapter 11 case to a case under chapter 7; (e) dismissal of the Debtor's chapter 11 case.  The Debtor shall have 30 days to cure any Event of Default.

(ix)    Loan Fees.  No Loan Fee will be charged in connection with the DIP Facility.  No penalty for early payment.

(x)     Expenses.  Borrower shall be responsible for all reasonable fees, costs and expenses of Lender up to $10,000, including any and all expenses of Lender's counsel and shall reimburse such amounts promptly upon demand;

any additional fees, costs and expenses of Lender in excess of $10,000 shall be due upon repayment or maturity.

(xi)    Priority, Liens, Collateral.  The DIP Lender is granted a first lien against all assets of the Debtor ("DIP Liens"); notwithstanding the foregoing, the liens granted to the DIP Lender shall not attach to any Chapter 5 causes of action, or any proceeds recovered therefrom, of the Debtor's bankruptcy estate.

(xii)   Carve-Out.  The DIP Liens and the any Superpriority DIP Claim granted to the DIP Lender all are subject to a carve-out of funds for fees of professionals retained in the Debtor's chapter 11 case and for U.S. Trustee fees.

(xiii)  Due Diligence.  The entry of the Final Order shall be subject to the DIP Lender's evaluation of the Collateral.

F.    As disclosed in the *List of Equity Security Holders* [Docket No. 37], the DIP Lender is the Debtor's corporate parent holding 100% of the Debtor's outstanding common stock.

G.    The Debtor is unable to obtain unsecured or secured credit on terms superior to the proposed DIP Facility offered by the DIP Lender and is unable to obtain secured financing without granting the DIP Liens.  The DIP Lender is demonstrated to be able to most economically facilitate the Debtor's needs to utilize the chapter 11 process and is in the best interest of the Debtor's estate and its creditors.

H.    The DIP Facility has been proposed in good faith and is necessary to preserve the assets of the Debtor's bankruptcy estate.  The Court finds that the terms of the DIP Facility are fair, reasonable, and adequate given the circumstances of this case, and demonstrate the Debtor's

exercise of good faith sound business judgment.  The Debtor is therefore authorized to enter into the DIP Facility that is necessary to preserve the assets of its bankruptcy estate.

**ACCORDINGLY, IT IS HEREBYT ORDERED AND ADJUDGED THAT:**

1.     **Motion Granted on an Interim Basis**.  The Motion is **GRANTED** on an interim basis on the terms set forth herein.

2.     **Authority to Enter into the DIP Facility.**  For purposes of this Interim Order, the Debtor is immediately authorized to enter into the DIP Facility upon the terms of the Term Sheet.

3.     Pursuant to the Term Sheet, the Debtor may immediately borrow the sum of up to $500,000.00 of the total available $1,500,000.00 under the DIP Facility during the interim period prior up to the Final Hearing.  The Debtor's borrowings drawn on the DIP Facility shall be referred to as the "DIP Obligations".

4.     **Security for DIP Loan**.  Pursuant to section 364(c)(2) and (3) of the Bankruptcy Code, DIP Lender shall be, and hereby is granted, effective immediately upon entry of this Interim Order, valid and perfected security interest and liens in all of the assets of the Debtor, except for causes of action pursuant to chapter 5 of the Bankruptcy Code and any recoveries from the pursuit thereof, as set forth in this Interim Order and the Term Sheet (the "DIP Collateral") to secure the DIP Obligations.  The DIP Liens against the DIP Collateral shall be, and hereby are determined to be perfected without the need for the execution or filing of any future document or instrument otherwise required to be executed or filed under applicable non-bankruptcy law.

5.     **Superpriority Administrative Claim**.  For the DIP Obligations drawn under the DIP Facility, for the benefit of itself, the DIP Lender is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "Superpriority DIP Claim"), having priority in right of payment over any and all other obligations,

liabilities and indebtedness of the Debtor, whether now in existence or incurred by the Debtor after the Petition Date, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 331, 503(b), 507(a), 364(c)(1), 564(c), 726 or 1114 of the Bankruptcy Code, provided, however, that the Superpriority DIP Claim shall be subject to the DIP Liens and the Carve-Out.

6.      **Effectiveness of DIP Facility and DIP Obligations**. From and after entry of this Interim Order, the terms and conditions hereof shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of this Interim Order for all purposes during this chapter 11 case, any subsequently converted case of the Debtor under chapter 7 of the Bankruptcy Code and any chapter 7 trustee appointed, or after the dismissal of this chapter 11 case. No obligation, payment, transfer or grant of security under this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any appliable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Voidable Transactions Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.      **Section 364(e)**.  The Court finds that the DIP Lender being the Debtor's sole corporate parent holding 100% of the outstanding common stock of the Debtor has been adequately disclosed to all parties in interest, the DIP Lender has acted in good faith in extending credit, and the Debtor has demonstrated the exercise of good faith sound business judgment in seeking the DIP Facility.  Accordingly, DIP Lender shall be entitled to all protections pursuant to section 364(e) of the Bankruptcy Code to the fullest extent available.

8.      **Budget**.  Subject to the terms and conditions of this Interim Order, the DIP Facility,

and the DIP Loan Documents, the Debtor is authorized to use the proceeds of the DIP Facility in accordance with the Budget attached hereto as **Exhibit 2**.

9.      **Carve-Out**. Notwithstanding any other provision of this Order, the DIP Loan Documents, the DIP Liens and the Superpriority DIP Claim granted to the DIP Lender pursuant to this Interim Order all are subject to a carve-out of funds (hereinbefore and hereinafter, the "Carve-Out") for the following administrative expenses: (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to section 1930(a) of Title 28, United States Code; and (b) all fees and expenses of the Debtor's bankruptcy counsel in an amount up to $450,000.

10.      **Automatic Perfection of the DIP Liens**.  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, validity, and enforceability of the DIP Liens upon the DIP Collateral granted to the DIP Lender as set forth in this Interim Order, the Term Sheet, and the DIP Loan Documents.  The DIP Lender shall not be required to file any financing statement, mortgage, deed of trust, assignments of rents, notice of lien, and/or any similar documents or take any other action (including possession of any of the DIP Collateral) in order to validate the perfection of the DIP Liens.

11.      **Events of Default; Remedies**.  Events of Defaults with respect to the DIP Facility and DIP Obligations shall be those specified in the Term Sheet or the DIP Loan Documents.

12.      **No Stay**.  There is no stay of this Interim Order, including no stay pursuant to Bankr.R.Proc. 6004(h) (to the extent applicable).

13.      **Notice and Hearing**.  A final hearing on the Motion is scheduled for _____, **2025 at** _____ (the "Final Hearing").  The Debtor shall, no later than the second business day after the entry of this Interim Order, mail copies of this Interim Order, along

---

with a copy Notice of Final Hearing, to all parties having been given notice of the Motion and Interim Hearing, including the top twenty largest unsecured creditors, the Office of the United States Trustee, and all parties who have filed requests for notice under Federal Rule of Bankruptcy Procedure 2002. Any objections to the relief requested in the Motion with regard to final authority must be filed and served so that it is received by counsel for the Debtor (Vartabedian Hester & Haynes LLP at emily.chou@vhh.law; blake.glatstein@vhh.law; and mary.stanberry@vhh.law), counsel for the DIP Lender (_____), and the U.S. Trustee (Susan Hersh, Office of the U.S. Trustee at Susan.Hersh@usdoj.gov) no later than _____, 2025 at _____ **Central time**.

14. This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

**### End of Order ###**

**EXHIBIT 1**



**Ecube Labs Co., Ltd.**
#1503, 55 Digital-ro 34-gil
Guro-gu, Seoul, Republic of Korea 08378

Tel:  02-868-0293
market@ecubelabs.com
www.ecubelabs.com

## <u>Debtor-In-Possession Term Loan Facility</u>

November 6, 2025

This Term Sheet sets forth the terms and conditions of the debtor-in-possession financing facility (the "Facility") to be provided by Ecube Labs Co., Ltd. ("Lender") to the Borrower. This term sheet is non-binding and is merely an expression of interest until entry of an Interim Financing Order. Lender is comfortable advancing Interim funds upon entry of an Interim Order consistent with the terms and conditions of this Term Sheet as may be amended from time to time.

| | |
|---|---|
| **Borrower:** | Ecube Labs Co. |
| **Facility Amount:** | $1,500,000 ($500,000 DIP Loan on Interim Order; with an additional $1,000,000 DIP Loan on Final Order). |
| **Term:** | The Facility shall terminate on the earlier of one (1) year after origination, effective date of a plan, consummation of a sale of substantially all of the Borrower's assets under section 363 of the Bankruptcy Code, Borrower's filing of a motion seeking to dismiss or convert to chapter 7, entry of an order converting the case to chapter 7 or for appointment of a trustee. |
| **Use of Proceeds:** | General working capital, bankruptcy statutory fees and professional fees. |
| **Interest Rate:** | The unpaid principal balance of this Facility shall bear interest at the greater of (i) the Prime Rate (as defined below) plus two and three quarters percent (2.75%) per annum or (ii) six percent (6%) per annum. Such Interest Rate will be adjusted with fluctuation in the Prime Rate. |
| | The "Prime Rate" shall mean the prime rate of interest as quoted in the most recently published issue of The Wall Street Journal (Central Edition) under the "Money Rates" table. |
| **Default Rate:** | Interest Rate plus 6% or maximum allowed by law, whichever is greater. The Default Rate shall automatically accrue from and after the occurrence and continuance of any Event of Default in the definitive loan documents. |
| **Maturity Date:** | Whichever is earlier (1) effective date of plan for reorganization, (2) sale of substantially all assets, (3) alternative DIP financing secured, or (4) an uncured Event of Default |

**ECUBE LABS**

| | |
|---|---|
| **Event of Default:** | If the Loan shall not have the priority contemplated by this Terms Sheet |
| | Unauthorized disbursement |
| | Sale of substantially all assets without consent |
| | Conversion to chapter 7 |
| | Dismissal of the bankruptcy |
| | ** Debtor allowed 30 days to cure any Event of Default |
| **Loan Fees:** | None. |
| | No penalty for early payment. |
| **Expenses:** | Borrower shall be responsible for all reasonable fees, costs and expenses of Lender up to $10,000, including any and all expenses of Lender's counsel and shall reimburse such amounts promptly upon demand; any additional fees, costs and expenses of Lender in excess of $10,000 shall be due upon repayment or maturity |
| **Covenants:** | Standard DIP Covenants in Interim and Final Orders. Loan Documents to be prepared on entry of Interim Order; however, will advance Interim based off Term Sheet upon entry of Interim Order. |
| | Payoff of Interim funding (including all interest, fees, and costs) if alternate lender on Final. |
| **Priority, Liens, Collateral:** | A senior super priority claim and first lien against all assets of the Borrower. |
| | Other standard DIP protections |
| | No lien on chapter 5 avoidance actions. |
| | Carve out for professional fees and US Trustee fees. |
| **Due Diligence:** | Final subject to evaluation of Collateral. |

_____

Sunbeom Gwon, CEO, Ecube Labs Co., Ltd.

_____

James Noh, COO, Ecube Labs Co.

# EXHIBIT 2

# 13-Week Budget
## In re Ecube Labs Co.

| | Nov 10 - 16 | Nov 17 - 23 | Nov 24 - 30 | Dec 1 - 7 | Dec 8 - 14 | Dec 15 - 21 | Dec 22 - 28 | Dec 29 - Jan 4 | Jan 5 - 11 | Jan 12 - 18 | Jan 19 - 25 | Jan 26 - Feb 1 | Feb 2 - 8 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| STARTING CASH | $410,000 | $434,644 | $802,624 | $746,809 | $1,051,704 | $1,227,669 | $1,096,739 | $1,085,764 | $925,779 | $903,999 | $865,914 | $857,939 | $708,054 |
| INFLOW | | | | | | | | | | | | | |
| Haulla Revenue (Stripe) | $150,000 | $30,000 | $30,000 | $430,000 | $150,000 | $30,000 | $30,000 | $0 | $440,000 | $150,000 | $30,000 | $30,000 | $450,000 |
| (Checks) | $25,000 | $25,250 | $25,500 | $25,750 | $26,000 | $26,250 | $26,500 | $26,750 | $27,000 | $27,250 | $27,500 | $27,750 | $28,000 |
| DIP Loan | $500,000 | $500,000 | | | $500,000 | | | | | | | | |
| TOTAL INFLOW | $1,085,000 | $555,250 | $55,500 | $455,750 | $676,000 | $56,250 | $56,500 | $26,750 | $467,000 | $177,250 | $57,500 | $57,750 | $478,000 |
| OUTFLOW | | | | | | | | | | | | | |
| Past-due Haulla COGS | $613,171 | | | | | | | | | | | | |
| Haulla COGS | $400,000 | $100,000 | $50,000 | $50,000 | $410,000 | $100,000 | $50,000 | $50,000 | $420,000 | $100,000 | $50,000 | $50,000 | $430,000 |
| Liquidated Damages | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 |
| Auto Expense | $490 | $490 | $490 | $490 | $490 | $490 | $490 | $490 | $490 | $490 | $490 | $490 | $490 |
| Administrative | $780 | $780 | $780 | $780 | $780 | $780 | $780 | $780 | $780 | $780 | $780 | $780 | $780 |
| Bank Service Charges | $370 | $370 | $370 | $370 | $370 | $370 | $370 | $370 | $370 | $370 | $370 | $370 | $370 |
| Filing Fee | $150 | $0 | $150 | $0 | $0 | $0 | $0 | $200 | $0 | $0 | $0 | $0 | $0 |
| Insurance | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $800 | $5,000 | $0 | $0 | $0 | $0 |
| Outside Service | $3,000 | $0 | $3,000 | $0 | $3,000 | $0 | $3,000 | $0 | $3,000 | $0 | $3,000 | $0 | $3,000 |
| Employee Salaries | $28,000 | $0 | $28,000 | $3,100 | $28,000 | $0 | $0 | $31,100 | $0 | $28,000 | $0 | $31,100 | $0 |
| Payroll Fees | $3,700 | $0 | $0 | $0 | $3,700 | $0 | $0 | $0 | $3,700 | $0 | $0 | $0 | $0 |
| Postage & Delivery | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 |
| Printing & Reproduction | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 |
| Accounting Fees | $0 | $0 | $0 | $5,000 | $0 | $0 | $0 | $10,000 | $0 | $0 | $0 | $5,000 | $0 |
| Legal Fees | $0 | $75,000 | $0 | $75,000 | $0 | $75,000 | $0 | $75,000 | $0 | $75,000 | $0 | $75,000 | $0 |
| Rents | $0 | $0 | $0 | $3,925 | $0 | $0 | $0 | $3,925 | $0 | $0 | $0 | $3,925 | $0 |
| Repairs & Maintenance | $0 | $0 | $0 | $0 | $0 | $0 | $2,000 | $0 | $0 | $0 | $0 | $0 | $0 |
| Supplies | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 |
| Taxes & Licenses | $0 | $0 | $15,000 | $0 | $43,000 | $0 | $0 | $0 | $44,000 | $0 | | $0 | $45,000 |
| Telephone & Internet | $155 | $0 | $205 | $750 | $155 | $0 | $205 | $750 | $0 | $155 | $205 | $750 | $0 |
| Tools & Parts | $0 | $0 | $280 | $0 | $0 | $0 | $0 | $280 | $0 | $0 | $0 | $280 | $0 |
| Travel | $0 | $0 | $1,500 | $0 | $0 | $0 | $0 | $1,500 | $0 | $0 | $0 | $1,500 | $0 |
| Utilities | $0 | $90 | $0 | $900 | $0 | $0 | $90 | $0 | $900 | $0 | $90 | $900 | $0 |
| Warranty Expense | $0 | $0 | $1,000 | $0 | $0 | $0 | $0 | $1,000 | $0 | $0 | $0 | $1,000 | $0 |
| UST Quarterly Fees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $26,000 | $0 |
| TOTAL OUTFLOW | $1,060,356 | $187,270 | $111,315 | $150,855 | $500,035 | $187,180 | $67,475 | $186,735 | $488,780 | $215,335 | $65,475 | $207,635 | $490,180 |
| ENDING CASH | $434,644 | $802,624 | $746,809 | $1,051,704 | $1,227,669 | $1,096,739 | $1,085,764 | $925,779 | $903,999 | $865,914 | $857,939 | $708,054 | $695,874 |