Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
Mary Taylor Stanberry
State Bar No. 24143781
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: emily.chou@vhh.law
　　　blake.glatstein@vhh.law
　　　mary.stanberry@vhh.law

PROPOSED ATTORNEYS FOR DEBTOR
AND DEBTOR IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| ECUBE LABS CO. | ) | Case No. 25-43950 |
| | ) | |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE ASSUMPTION OF THE FRONTIER WASTE SOLUTIONS HAULER AGREEMENT AS AMENDED AND RESTATED, AND (II) ESTABLISHING THE NEGOTIATED CURE AMOUNT ASSOCIATED WITH THE FRONTIER WASTE SOLUTIONS HAULER AGREEMENT**

Ecube Labs Co. ("Ecube" or the "Debtor"), as debtor-in-possession, files *Debtor's Motion for Entry of an Order (I) Authorizing the Assumption of the Frontier Waste Solutions Hauler Agreement as Amended and Restated, and (II) Establishing the Negotiated Cure Amount Associated with the Frontier Waste Solutions Hauler Agreement* (the "Motion"). By this Motion, the Debtor seeks to assume the Amended and Restated Hauler Agreement, an executory contract between Frontier Texas Ventures I, LLC d/b/a Frontier Waste Solutions and the Debtor, attached as **Exhibit A** ("Amended Frontier Agreement").

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This case and all related matters have been referred to this Court pursuant to 28 U.S.C. § 157. This Motion constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and other predicates for the relief requested are 11 U.S.C. §§ 105(a) and 365.

## PROCEDURAL BACKGROUND

4. On October 10, 2025 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code.

5. The Debtor continues to manage and operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this case.

6. On November 14, 2025, the Court granted the Debtor's Omnibus Motion for Entry of Order (I) Authorizing the Assumption of Eight Hauler Agreements, and (II) Establishing the Cure Amounts Associated with the Eight Hauler Agreements ("First Assumption Order"), ECF No. 67. Frontier Texas Ventures I, LLC d/b/a Frontier Waste Solutions ("Frontier") was not one of the eight independent haulers assumed in the First Assumption Order.

## BACKGROUND

A. **About the Debtor**

7. The Debtor is a Delaware corporation. The Debtor brokers waste management services for the commercial sector. It connects local businesses with local waste haulers.

2

8. Unlike traditional waste management companies, the Debtor does not have its own fleet of dump trucks, a pool of drivers as employees, or boots-on-the-ground salespeople across the country. The Debtor maintains a small staff of office employees for administrative and back-office tasks, the Debtor contracts with third-party staffing agencies to staff the company's remote sales and customer service teams, and the Debtor contractually engages independent waste haulers local to the Debtor's customers to provide waste pickup services. As of the Petition Date, the Debtor has grown its business to thousands of customers.

**B.    The Frontier Waste Solutions Hauler Agreement**

9. As described above, the Debtor engages third-party haulers to provide waste pickup for its customers. As of the Petition Date, the Debtor is actively engaged with over 35 independent haulers (collectively, the "Independent Haulers"). Each Independent Hauler executed a hauler agreement with the Debtor which governs the terms of the relationship.

10. Frontier is one of the Independent Haulers. The original hauler agreement for Frontier is attached as **Exhibit B** (the "Original Frontier Agreement").

11. Frontier is the Debtor's largest third-party hauler partner. Frontier provides hauling services to approximately 1,500 of Debtor's customers. As of the Petition Date, Frontier is owed $802,754.18 for prepetition services it provided to the Debtor's customers on behalf of the Debtor. *See* 3.31, *in Schedule E/F: Creditors Who Have Unsecured Claims*, ECF No. 44, at 19.

12. Frontier is essential to the Debtor's business, and the continued partnership with Frontier is necessary for the successful reorganization of the Debtor. One of the primary reasons the Debtor can offer services to its customers at a lower price than the larger traditional waste management companies is through the use of the Independent Haulers to service customers local to the haulers. Under this business model, overhead is reduced for both the Debtor and the

3

Independent Haulers, and the customers enjoy the benefits of a lower price as compared to the larger traditional waste management companies.

13. Because of its size, Frontier's partnership with the Debtor allows the Debtor to service a large portion of customers in major metropolitan areas in Texas. Frontier's partnership provides the Debtor stability in an otherwise volatile market; such stability is essential to the Debtor's growth and reorganization.

14. Moreover, the Debtor has worked tirelessly over the years to negotiate the lowest prices with local haulers to save its customers more money and maximize its margins, and Frontier has continuously provided the Debtor with competitive pricing and reliable service that is irreplaceable to the Debtor's business.

15. One of the Debtor's greatest assets is its reputation that it has built over the years amongst the Independent Haulers, especially Frontier.

16. Recently, Frontier has notified the Debtor that it intends to terminate service. Frontier has argued that it has a basis to claim it terminated the contract pre-petition. The Debtor disagrees and has argued it would file a motion to compel. Frontier indicated it is prepared to litigate this issue if necessary.

17. The Debtor needs to keep Frontier as a partner given its size and the number of customers it services for the Debtor. The Debtor could not replace service for that many customers in a matter of days, if at all. Losing Frontier as a service provider for even two weeks would be detrimental to the Debtor's business and reorganization. The Debtor could potentially lose 1,500 customers—a large portion of its customer base.

18. While the Debtor believes it has an active executory contract and would be victorious in litigation to compel performance, Frontier has the resources to litigate the motion to the fullest extent and any non-service to the Debtor's customers during that litigation would

irreparably harm the Debtor. Frontier also could go around the Debtor and service the customers directly.

19. After arms-length negotiation with Frontier, the parties reached an agreement to amend the Original Frontier Agreement and the Debtor would move to assume the contract as amended. The parties have also agreed to a cure amount of $625,000, over 22% less than the amount on Debtor's Schedule E/F. *Compare* Exhibit A ¶ 1.1(b), *with* 3.31, *in* ECF No. 44, at 19. This is significant savings to the Debtor's estate.

20. Accordingly, the Debtor seeks to assume Amended Frontier Agreement, Exhibit A, because of the importance of the Debtor's partnership with Frontier, which provides services to 1,500 customers, and the negotiated savings from a reduced cure amount. Without the continued cooperation and support of Frontier, there is a significant risk that many of the Debtor's customers will terminate their customer agreements with the Debtor for competitors' waste services, including Frontier's, and the Debtor risks tarnishing its reputation, which has already been negatively impacted by the Debtor's bankruptcy filing. The Debtor's customers rely on the Debtor's consistency of service through its Independent Haulers, including Frontier. For these reasons, the Debtor believes that it is in the best interest of the Debtor, its estate and the creditors for the Debtor to assume the Amended Frontier Agreement.

21. Furthermore, the Debtor wants to avoid having to potentially compel performance of executory contracts from Frontier because (a) the costs to compel compliance with the contract during the pendency of the bankruptcy would only waste resources unnecessarily, and (b) the Debtor wants to minimize the disturbances to its working and customer relationships. Preserving the relationship with Frontier is necessary for the Debtor's continued success and future reorganization.

## RELIEF REQUESTED AND BASIS FOR RELIEF

22. By this Motion, the Debtor seeks authority to assume the Amended Frontier Agreement. A redline comparison between the Original Frontier Agreement and the Amended Frontier Agreement is attached as **Exhibit C** to illustrate the arms-length and good-faith natured dealings between the parties. As noted, Frontier has agreed to a discounted cure amount of $625,000.00, which is a savings to the Debtor's estate of about $177,750.

23. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."[1] "The usual test for the assumption or rejection of an executory contract is whether assumption or rejection meets the 'business judgment test,'"[2] The business judgment test is not a strict standard, but merely requires "a showing that [assumption] will be advantageous to the estate and the decision be based on sound business judgment."[3] Indeed, "[a]s long as assumption . . . appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to assume . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code."[4]

24. As set forth above, the assumption of the Amended Frontier Agreement is essential (a) to the stability of the Debtor's business and (b) for a successful reorganization. In exercising

---

[1] 11 U.S.C. § 365(a).

[2] *In re Mirant Corp.*, 348 B.R. 725, 743 (Bankr. N.D. Tex. 2006); *see also Richmond Leasing Co. v. Cap. Bank, NA*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Idearc, Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009); *In re Wolflin Oil, LLC*, 318 B.R. 392, 396 (Bankr. N.D. Tex. 2004) ("[A]ssumption must represent 'a proper exercise of business judgment.'" (quoting *Richmond Leasing*, 762 F.2d at 1309)).

[3] *In re Idearc*, 423 B.R. at 162 (alteration added).

[4] *Richmond Leasing*, 762 F.2d at 1309 (quoting *Allied Tech., Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio1982)); *accord In re Idearc*, 423 B.R. at 162 ("In the absence of a showing of bad faith or an abuse of business discretion, the debtor's business judgment will not be altered.").

good-faith business judgment, the Debtor believes the preservation of the good relationship with Frontier is integral to the stability of the Debtor's operations and its very restructuring viability.

25. If there has been a default in an executory contract that a debtor seeks to assume, the debtor must, in addition to satisfying the business judgment test, meet additional requirements set forth in section 365(b)(1) of the Bankruptcy Code before the Debtor may be authorized to assume. Specifically, section 365(b)(1) provides:

> If there has been a default in an executory contract . . . of the debtor, the [debtor] may not assume such contract . . . unless, at the time of assumption of such contract . . ., the [debtor]—
>
> (A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . .;
>
> (B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract . . ., for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract . . . .

11 U.S.C. § 365(b)(1) (alteration added).

26. Prior to filing this Motion, the Debtor participated in arms-length negotiations with Frontier and its counsel to determine a cure amount. Frontier has agreed to reduce its cure amount to $625,000.00 (the "<u>Frontier Cure Amount</u>"), approximately $177,750 less than Frontier's scheduled unsecured claim amount and savings to the estate.

27. Frontier is an indispensable part of the Debtor's operations. Frontier's large portfolio of hauler locations and established successful partnership serving over 1,500 of the Debtor's customers renders Frontier's continued partnership with the Debtor an invaluable asset of the Debtor's estate. As such, the Debtor seeks the assumption of the Amended Frontier Agreement at this juncture in the case because it cannot afford to risk losing Frontier's trust and

cooperation and risk the losing significant number of customers serviced by Frontier.

28. While as a counterparty to an executory contract Frontier would not be permitted to stop providing service on account of pre-petition debt owed, the Debtor risks losing the continued cooperation and support of Frontier as the Debtor works towards successful reorganization in this bankruptcy case. As explained above, the Debtor may have the legal right to seek to compel continued performance, but the potential gap in services to the Debtor's customers could result in the Debtor losing significant customers altogether and jeopardize the Debtor's chance for a successful reorganization.

29. For the reasons set forth above, in the exercise of its good-faith business judgment, the Debtor believes the assumption of the Amended Frontier Agreement is in the best interests of the Debtor's operations and viability, and thus in the best interest of the Debtor's estate and its creditors.

## **CONCLUSION**

30. The Debtor respectfully requests that the Court grant the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: November 28, 2025                Respectfully submitted,

                                        */s/ J. Blake Glatstein*
                                        Emily S. Chou
                                        State Bar No. 24006997
                                        J. Blake Glatstein
                                        State Bar No. 24123295
                                        Mary Taylor Stanberry
                                        State Bar No. 24143781
                                        **VARTABEDIAN HESTER & HAYNES LLP**
                                        301 Commerce Street, Suite 2200
                                        Fort Worth, Texas 76102
                                        Tel: 817-214-4990
                                        Email: emily.chou@vhh.law
                                               blake.glatstein@vhh.law
                                               mary.stanberry@vhh.law

                                        PROPOSED ATTORNEYS FOR DEBTOR
                                        AND DEBTOR IN POSSESSION

## CERTIFICATE OF SERVICE

I certify that on November 28, 2025, a true and correct copy of the foregoing document will be served upon the office of the United States Trustee for the Northern District of Texas and the parties that have filed a notice of appearance via the Court's electronic filing (ECF) system.

                                        */s/ J. Blake Glatstein*
                                        J. Blake Glatstein