# AMENDED AND RESTATED HAULER AGREEMENT

This Amended and Restated Hauler Agreement (the "Agreement") is by and between Ecube Labs Co. with its primary place of business at 2250 W Main St., Suite 203, Alhambra, CA 91801 ("Ecube Labs") and Frontier Texas Ventures I, LLC (d.b.a. Frontier Waste Solutions) with its primary place of business at 1700 Pacific Ave., Suite 4600, Dallas, TX 75201 ("Hauler," and, together with Ecube Labs, the "Parties").

## RECITALS

WHEREAS, on or around April 15, 2020, the Parties entered into a Hauler Agreement whereby Frontier Waste agreed to provide waste collection services to clients relayed by Ecube Labs (the "Original Hauler Agreement");

WHEREAS, on October 10, 2025 (the "Petition Date"), Ecube Labs filed a voluntary petition for relief commencing a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court");

WHEREAS, following the commencement of the Chapter 11 Case, certain disputes arose between the parties, including whether the Original Hauler Agreement was validly terminated prior to the Chapter 11 Case and whether Hauler is obligated to continue servicing Clients of Ecube Labs;

WHEREAS, on November 10, 2025, Ecube Labs filed its schedules at ECF No. 44, in Case No. 4:25-bk-43950, including an unsecured claim of $802,754.18 due to Hauler for trade debt at entry 3.31 in Schedule E/F, which claim is not scheduled as being disputed, contingent or unliquidated;

WHEREAS, Ecube Labs desires to assume its agreement with Hauler, and Hauler agrees to the assumption and reinstatement of such agreement as amended hereby and conditioned upon its receipt of the Agreed Cure Amount (defined below);

WHEREAS, on November 28, 2025, Ecube Labs filed the *Debtor's Motion for Entry of an Order (I) Authorizing the Assumption of the Frontier Waste Solutions Hauler Agreement as Amended and Restated, and (II) Establishing the Negotiated Cure Amount Associated with the Frontier Waste Solutions Hauler Agreement* (the "Approval Motion") seeking authority and approval for, among other things, (i) the assumption of its agreement with Hauler as amended and restated by this Agreement and (ii) the transactions contemplated hereby; and

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows below.

# ARTICLE I
# EFFECTIVE DATE AND TERM

**1.1** **Conditions Precedent to Effectiveness**. This Agreement will become effective and binding on the Parties on the date when each of the following shall have occurred (the "Effective Date"):

(a) The Bankruptcy Court shall have entered an order granting the Approval Motion, approving and authorizing the transactions provided for herein, and such order shall have become a final order (the "Approval Order"); and

(b) Hauler shall have received payment in cash in the amount of $625,000 from Ecube Labs (the "Agreed Cure Amount").

**1.2** **Term**. The term of this Agreement shall commence on the Effective Date and extend until the 1-year anniversary of the Effective Date, unless earlier terminated pursuant to Article III (the "Initial Term"). This Agreement shall automatically renew for an additional one year after the Initial Term or any successive one-year term, unless either Party provides express written agreement to terminate or otherwise not renew the term of this Agreement, not later than 90 days before the expiry of the then-current Term.

# ARTICLE II
# HAULER'S WORK AND OTHER OBLIGATIONS

Hauler acknowledges and agrees that the decision to provide waste collection service to any client(s) relayed by Ecube Labs ("Client") is made by the Hauler at its sole discretion. The following clauses only apply to Clients to whom Hauler agrees to provide waste collection services.

**2.1** **Client**. Ecube Labs will pay the necessary liquidated damages to terminate the contract of each new Client with its incumbent waste service provider. As such, the relationship and contract concerning each Client rests solely with Ecube Labs. Contracts for waste collection services with each Client are to be procured by Ecube Labs and the waste collection services are to be provided by Hauler on behalf of Ecube Labs.

**2.2** **Dumpster**. Container(s) used for storage of waste ("Dumpster") will be provided to Client by Ecube Labs, unless otherwise agreed by the Parties in writing, and will remain the property of Ecube Labs.

**2.3** **Payment**. Unless otherwise agreed by the parties in writing, waste collection service fees shall be paid to the Hauler by Ecube Labs within 45 days of the date of the invoice for such waste collection service fees.

**2.4** **Insurance**. Hauler shall obtain and maintain, at its own expense, the following minimum insurance coverage and will furnish to Ecube Labs evidence of that insurance.

(a) Hauler shall maintain commercial liability insurance in the amount of no less than $1,000,000 of coverage that includes premises/operations liability, independent contractor liability and broad form contractual liability. The policy shall include a waiver of subrogation in favor of Ecube Labs and also include Ecube Labs as "Additional Insured."

(b) Hauler shall maintain commercial liability insurance in the amount of no less than $1,000,000 of coverage concerning all owned, hired and non-owned automobiles and other vehicles used by or on behalf of Hauler and Hauler's employees, contractors and agents. The policy shall include a waiver of subrogation in favor of Ecube Labs and include Ecube Labs as "Additional Insured." Ecube Labs shall obtain and maintain general liability insurance in the amount of no less than $1,000,000 of coverage, which shall include coverage for all claims and loss relating to dumpsters.

**2.5** **Equipment**.

(a) Responsibility. The equipment furnished by Ecube Labs shall remain property of Ecube Labs. Hauler acknowledges that picking up, transporting and delivering the equipment from a location specified by Ecube Labs to the Client's address is its responsibility and that it has care, custody and control of the equipment while at the Client's location. Hauler agrees, defends and holds harmless Ecube Labs against all claims, damages, suits, penalties, fines and liabilities, for injury or death to persons or loss or damage that may result from Hauler's gross negligence or willful misconduct in handling of the equipment.

(b) Access. Ecube Labs agrees to make sure Hauler is provided with unobstructed access to the equipment on the scheduled collection day. If the equipment is inaccessible so that the regular scheduled pickup cannot be made, Hauler will promptly notify Ecube Labs and afford Client a reasonable opportunity to provide the required access.

(c) Definition. The word "equipment" shall include, but not limited to, Dumpster(s) and fill-level sensor(s) furnished by Ecube Labs.

## ARTICLE III
## DEFAULT AND TERMINATION

**3.1** **Events of Default**. Each of the following shall constitute an event of default (each, an "Event of Default") under this Agreement:

(a) Payment. Ecube Labs shall have failed to make any payment as and when due and owed hereunder.

(b) Failure to Comply with Material Provision. A Party shall have failed to comply with any material provision of this Agreement not otherwise described in this section 3.1, and the breaching Party has not cured such failure within 14 days after written notice thereof is delivered to the breaching Party by the non-breaching Party.

**3.2**    <u>Termination upon Event of Default</u>.  Upon the occurrence of an Event of Default, the non-breaching Party shall have the right to (a) immediately suspend its performance under this Agreement until such time as the breaching Party shall have cured the Event of Default and (b) terminate this Agreement effective upon 14 days prior written notice to the Breaching Party.

**3.3**    <u>Termination for Convenience.</u> Notwithstanding the foregoing terms and provisions regarding termination, Ecube Labs shall have the right to terminate this Agreement for convenience upon 5 days written notice to Hauler; *provided*, *however*, that (i) as conditions precedent to the effectiveness of such termination for convenience, Ecube Labs shall have paid Hauler all amounts outstanding for waste management services rendered by Hauler to Clients prior to the date of such termination plus an additional termination for convenience fee equal to $25,000; and (ii) Ecube Labs shall not have the right to cause the termination of Hauler's services as to any individual Client unless Hauler demands a Material Price Increase (defined below) applicable to such Client that is not agreed to by Ecube Labs.  "<u>Material Price Increase</u>" means a price increase exceeding any positive change in the Consumer Price Index for All Urban Consumers (as published by the Bureau of Labor Statistics) for the 12 months preceding the proposed increase.

# ARTICLE IV
# ACKNOWLEDGEMENTS REGARDING EFFECTS OF ASSUMPTION

**4.1    Acknowledgment by Hauler**.  Hauler acknowledges and agrees that payment of the Agreed Cure Amount is in full, complete and final satisfaction of any claims or causes of action Hauler has or may have against Ecube Labs arising under or in relation to the Original Hauler Agreement prior to the Petition Date.  Entry of the Approval Order and the occurrence of the Effective Date shall preclude Hauler from asserting any claim in the Chapter 11 Case that arose prior to the Petition Date.

**4.2    Acknowledgement by Ecube Labs**.  Ecube Labs, on behalf of itself and its bankruptcy estate, acknowledges and agrees that as a matter of law a consequence of its assumption of this Agreement is the preclusion of any subsequent avoidance action against Hauler.  In furtherance of the same, and as further consideration for the settlement and compromises embodied herein, including without limitation Hauler's agreement to a discounted cure amount, Ecube Labs and its bankruptcy estate hereby forever release, waive and discharge any and all claims and causes of action arising under or in relation to Chapter 5 of the Bankruptcy Code against Hauler and its affiliates.

# ARTICLE V
# MISCELLANEOUS

**5.1    Indemnification**.  Hauler shall indemnify, defend and hold harmless Ecube Labs and its employees from and against any and all liabilities incurred in connection with any act, omission, breach of this agreement, or any other activity conducted by Hauler, its employees or its

affiliates with this agreement, solely to the extent that such act, omission, breach, or other activity constitutes gross negligence or willful misconduct.

      **5.2**    **Limitation of Liability**. Under no circumstances shall any Party or its employees be liable for any direct, indirect, actual, consequential, special or exemplary damages including, but not limited to, lost profits or loss of goodwill.

      **5.3**    **Assignment/Subcontractor**. Hauler shall not assign this Agreement and shall not assign or subcontract the performance of any of the Waste Collection Services without the prior written consent of Ecube Labs. Consent for the subcontracting of the performance of any of the Waste Collection Services will be given only if such subcontractor meets the requirements set forth under the terms of this Agreement, and Ecube Labs is added as an "additional insured" under such subcontractor's insurance.

      **5.4**    **Non-Solicitation**. During the Term of this Agreement and for six (6) months thereafter it is terminated under sections 1.2, 3.2, and 3.3, Hauler shall not solicit customers referred to Hauler by Ecube Labs; *provided, however*, that nothing herein shall prevent Hauler from servicing any prior Client of Ecube Labs that (i) terminates its relationship with Ecube Labs and (ii) on its own initiative and accord contacts Hauler and requests that Hauler provide waste management services.

      **5.5**    **Successors**. This Agreement shall be binding upon (a) Ecube Labs and any trustee or examiner that may be appointed in the Chapter 11 Cases, and their respective successors and assigns, (b) Hauler and its respective successors and assigns, (c) the trustee in the event that any of the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code. Nothing provided in any order confirming a chapter 11 plan in the Bankruptcy Case will derogate, limit or amend the terms of this Agreement.

      **5.6**    **Governing Law**. This Agreement shall be governed by, interpreted, construed and enforced in accordance with the laws of the state of Texas, without regard to principles of conflicts of law. The Parties hereto each submit to the exclusive jurisdiction of the State and Federal courts in (i) Tarrant County, Texas for so long as the Chapter 11 Case is pending and (ii) Dallas County, Texas thereafter.

      **5.7**    **Entire Agreement**. This Agreement, together with any other agreements between the Parties regarding pricing, embodies the entire agreement and understanding of the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements and understandings of the Parties, verbal or written, with respect to the subject matter hereof.

      **5.8**    **No Admission**. The Parties make no admissions as to any fact or legal conclusion with respect to their disputes concerning the Original Hauler Agreement. Should the Bankruptcy Court decline to grant the Approval Motion, nothing herein shall prejudice or limit the respective rights, claims and defenses of the Parties, all of which are reserved pending the entry of the Approval Order.

**5.9** **Authority**. Subject to the entry of the Approval Order, each of the Parties represents and warrants that it is authorized to enter into and perform under this Agreement.

**5.10** **Amendments**. No change, amendment, or modification of this Agreement shall be valid or binding upon the Parties unless such change, amendment, or modification shall be in writing and duly executed by both Parties.

**5.11** **Counterparts**. This Agreement may be executed in separate counterparts and delivered by electronic means, each of which when so executed shall be deemed an original, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

[*signatures on following page*]

| **Ecube Labs Co.** | **Frontier Texas Ventures I, LLC** |
|---|---|
| _____ | _____ |
| By: James Noh | By: [name] |
| Chief Operating Officer | [title] |
| November 26, 2025 | [date] |

*Signature Page to Amended and Restated Hauler Agreement*