Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
Mary Taylor Stanberry
State Bar No. 24143781
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Emails:
emily.chou@vhh.law
blake.glatstein@vhh.law
mary.stanberry@vhh.law

PROPOSED ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| ECUBE LABS CO. | ) | Case No. 25-43950 |
| | ) | |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S CASH MANAGEMENT MOTION FOR ENTRY OF AN ORDER (1) AUTHORIZING THE DEBTOR TO MAINTAIN ITS EXISTING REIMBURSEMENT SYSTEM IN THE ORDINARY COURSE OF BUSINESS, AND (2) FOR RELATED RELIEF**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 501 W. 10TH ST., RM. 147, FORT WORTH, TEXAS 76102 BEFORE CLOSE OF BUSINESS ON DECEMBER 19, 2025, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OF MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

Ecube Labs Co. (the "Debtor"), as debtor in possession, and files this *Debtor's Cash Management Motion for Entry of an Order (1) Authorizing the Debtor to Maintain Its Existing Reimbursement System in the Ordinary Course of Business; and (2) for Related Relief* (the "Motion").

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This case and all related matters have been referred to this Court pursuant to 28 U.S.C. § 157. This Motion constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The legal predicates for the relief requested §§ 105(a), 364(a), and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules").

## RELIEF REQUESTED

4. By this Motion, the Debtor seeks entry of an order under Section 364(a) of the Bankruptcy Code: (i) authorizing the Debtor to maintain its current reimbursement system, implemented several years prior to the Petition Date, whereby in the normal course of the Debtor's business the Debtor pays a large portion of its payables by the use of personal credit cards of its officers, and then the Debtor reimburses the officers for those charges; and (ii) granting related relief.

2

**BACKGROUND**

5. On October 10, 2025 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code.

6. The Debtor is operating its business and managing its property as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

7. No request for the appointment of a trustee or examiner has been made in this chapter 11 case ("Bankruptcy Case"), and no committees have been appointed or designated.

8. The Debtor previously filed the *Debtor's Emergency Cash Management Motion for Entry of Interm and Final Orders: (1) Authorizing the Debtor to Maintain Existing Bank Account* (the "Existing Account Motion," ECF No. 25). The Court granted (*see* ECF Nos. 36 and 78) the Existing Account Motion and authorized the Debtor to maintain its pre-petition bank accounts provided that the Debtor also opened a debtor-in-possession account to be used in conjunction with the prepetition accounts.

9. The Debtor files this Motion to seek to maintain its prepetition system, developed several years prior to the Petition Date, of the use of the personal credit cards of its officers to make payments on payables and reimbursement by the Debtor to the officers for those charges made.

10. The Debtor created a system years ago for its accounts payables ("AP") to be paid by use of its officers' personal credit cards[1] processed through a bill-pay system called Melio. Melio makes payments, by credit card, to vendors, matches its payments to invoices, and tracks reimbursements (the "Reimbursement System"). The Reimbursement System using Melio creates

---

[1] While Jae Han and Hyoung In Oh make some payments, the vast majority—over 80%—of the payments are made by James Noh, using his credit card(s).

the Debtor's books and records and allows the Debtor to pay its vendors through an easy and instant mechanism, often required by its vendors.

11. The Debtor's Chief Operating and Financial Officer James Noh developed the Reimbursement System. Mr. Noh joined the Debtor in 2019 when the Debtor was strictly an exclusive distributor for its parent company Ecube Labs Co., Ltd.'s ("Ecube Korea's") patented waste management technology products. From 2016 to 2018, before Mr. Noh joined the Debtor, the company struggled as a startup, and its credit was damaged by late payments to vendors and other cashflow mismanagement. The original CFO that Mr. Noh later replaced set up all the company accounts at Wells Fargo, where the Debtor currently holds bank accounts.

12. When Mr. Noh joined the Debtor, the company was much smaller and had low bank balances. A combination of low monthly bank balances and bad business credit meant that sending payments by wire was expensive for the Debtor. Plus, at the time in the distribution business especially, the Debtor did a lot of international purchases with vendors and international wires were even more expensive.

13. As Mr. Noh started building the Debtor's waste management brokerage business and looked for ways to expand the distribution business, the Debtor's AP increased correspondingly. But the Debtor's debit card at the time had a daily transaction limit of $3,000, so the Debtor badly needed an inexpensive payment mechanism to pay its increased expenses. The Debtor tried to sign up for a business credit card through Wells Fargo, but it was rejected because Mr. Noh was not a "US person" at the time since he was working in the United States on a work visa and the Debtor was owned by a non-US entity. This led to Mr. Noh and other officers of the Debtor to use personal credit cards to pay the AP and then getting reimbursements from the Debtor.

14. In 2020 and 2021, the Debtor started to grow as it expanded into the waste

management brokerage business. This meant increased AP. Many of the Debtor's third-party haulers and technology vendors require online payments. While the Debtor has the option of using ACH payments with some vendors, ACH often took two to five days to process compared to credit cards which is processed immediately. The Debtor continued to try to find ways to get a business credit card, even trying to sign up for products such as business lines of credit with a card attached. However, the fact that the Debtor is owned by a non-U.S. entity continued to be an obstacle to the Debtor getting approved for a credit card.

15. In 2022 and 2023, the Debtor experienced significant growth in the waste management brokerage business, and the record keeping of charging on personal credit cards and reimbursements was becoming cumbersome, but the Debtor was still unable to obtain a business credit card. Plus, by that time, Mr. Noh's and other officers' personal credit limits had grown much higher due to constant usage, so the increased personal credit lines kept pace with the Debtor's daily needs.

16. After some research to help with the growing stack of paperwork to keep accurate records of the Reimbursement System, the Debtor found Melio, a payment system that allows the Debtor to input all its vendors and make payments in one place. This simplified things so the Debtor no longer had to manually track payment records across multiple vendors all with differing payment and receipt methods. Melio charges a small processing fee for the record-tracking and keeping. In Mr. Noh's business judgment this system allowed the Debtor to stay lean and continue operations without adding bookkeeping employees. In his business judgment, Mr. Noh believed the Debtor was best served keeping its costs down while growing the business.

17. In 2024 and the beginning of 2025, the Debtor's credit had finally rebounded to satisfactory levels, and thus, the Debtor started getting offers from business credit card issuers.

But, as before, once the Debtor got halfway through the application process, the application would get flagged by underwriting due to the Debtor's foreign ownership. The reply would be the same each time, requiring that Mr. Noh or other officers personally cosign or guarantee any business credit card. Plus, the credit lines offered on the personally guaranteed business cards were $20,000 or $30,000, which were insufficient to meet the Debtor's AP needs. Mr. Noh's personal credit lines, and those of other officers, had become much larger and could sufficiently cover the Debtor's daily needs. Therefore, Mr. Noh made the business judgment to continue with the Reimbursement System. In essence, the use of personal credit cards of the officers do not in substance differ than if the Debtor has been able to obtain corporate credit cards with similar credit limits—because, either way, the officers are personally liable for the charges.

18.    In Mr. Noh's business judgment, the costs associated are still outweighed by the benefits of the Reimbursement System. Furthermore, Mr. Noh still cannot find an alternative way to pay the many vendors that require credit or debit payments online.

19.    The Debtor does use other methods of payment when available and makes more economic sense from a bookkeeping perspective. The Debtor does use ACH for those who accept it unless time is a factor since ACH takes longer to process. The Debtor also uses wires for vendors who bank with Wells Fargo because the wires are free and similarly fast like credit card payments. The Debtor also uses the company debit card for smaller transactions as the daily spending limit of the company debit card is $5,000.

20.    To summarize, the Debtor's Reimbursement System of paying its AP on personal credit cards for reimbursement started somewhere between 2019 and 2021. The Debtor incorporated the use of Melio into the Reimbursement System around 2022. Thus, as of the Petition Date, the Reimbursement System has been an integral part of the Debtor's normal operations for

several years. Post-petition, the Debtor continued with the Reimbursement System in the normal course as it has done over the last several years to pay post-petition and court-approved expenses.

21. The Reimbursement System necessarily generates a significant number of reimbursements made to the Debtor's officers. The reimbursements made by the Debtor through this Reimbursement System for the year prior to the Petition Date were disclosed in Section 4.1 and Addendum 2 of the Debtor's Statement of Financial Affairs ("SOFA," ECF No. 45).

22. During the 341 creditors meeting, the U.S. Trustee took issue with the significant number of transfers to insider officers of the Debtor as disclosed in the SOFA.[2] Furthermore, the U.S. Trustee has taken the position that the use of the Reimbursement System post-petition constitutes unapproved post-petition loans to the estate. As a result, while the Debtor was working with the U.S. Trustee on the Interim DIP Order (ECF No. 74) Granting Debtor's Motion ("DIP Motion") for Authorizing the Debtor to Obtain Secured Post-Petition Financing ("DIP Loan"), the U.S. Trustee insisted on the inclusion of a provision in the Interim DIP Order prohibiting the Debtor from using DIP Loan funds to reimburse the Debtor's officers unless the Debtor obtains further order from the Court authorizing such the reimbursements.[3]

23. The Debtor disagrees with the position taken by U.S. Trustee. The Reimbursement System is the ordinary course practice of the Debtor established long before the Debtor's bankruptcy filing. Even if the Reimbursement System can be argued to be extensions of credit, the Debtor believes it is allowed to continue the process post-petition under § 364(a) of the Bankruptcy Code because it is part of the Debtor's normal course of business.

24. Accordingly, the Debtor files this Motion respectfully asking the Court for an order

---

[2] Upon request, the Debtor has provided the U.S. Trustee with transaction backup for every expense reimbursement identified on Addendum 2 of the Debtor's SOFA.

[3] *See* Interim DIP Order, ECF No. 74, para. 9.

to allow the Debtor to continue to use its Reimbursement System post-petition in the ordinary course of business.

## BASIS FOR RELIEF

25. Continuation of the Debtor's Reimbursement System is permitted under § 364(a) of the Bankruptcy Code, which authorizes the debtor-in-possession to "to operate the business of the debtor" and "obtain unsecured credit and incur unsecured debt in the ordinary course of business . . . as an administrative expense," as defined in § 503(b)(1) of the Bankruptcy Code. Section 364(a) of the Bankruptcy Code also allows a debtor-in-possession to engage in ordinary course transactions required to operate its business, like the use of credit cards to pay expenses, without notice and court approval. *See In re Cent. Kan. Crude, LLC*, No. 09-13798, 2010 WL 7786072, at *3 (Bankr. D. Kan. Jan. 5, 2010); *see also, e.g.*, *In re Tex. Rangers Baseball Partners*, No. 10-43400, 2012 WL 13336970, at *6 (N.D. Tex. Dec. 11, 2012) (allowing the use of DIP Loan proceeds for a $1,500,000 credit card security deposit and noting that the credit card obligations are accorded administrative expense status under § 503(b)(1) of the Bankruptcy Code).

26. This Reimbursement System does not cause the Debtor to incur interest like typical loans and any additional fees outside the ordinary course of business. Indeed, last year, the Debtor's officers paid over $9 million of the Debtor's AP on their personal credit cards.

27. Since the Petition Date, the Debtor's officers have only paid AP allowable under § 364(a) of the Bankruptcy Code or expenses expressly approved by this Court. The Debtor has only reimbursed, and believes it may continue to reimburse its officers, for charges made on the personal e credit cards of its officers that are allowable under § 364(a) of the Bankruptcy Code or expenses expressly approved by this Court.

28. Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order,

process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Section 105(a) therefore authorizes bankruptcy courts to fashion any order or decree that would preserve or protect the value of the Debtor's assets. *See, e.g.*, *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) ("[Section 105(a)] has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings." (citation omitted)). The relief requested in this Motion is necessary to protect and preserve the value of the Debtor's estate and is appropriate under § 105(a) of the Bankruptcy Code.

29. Authorizing the Debtor to maintain the Reimbursement System would ensure the Debtor can operate its business in this chapter 11 case without the disruption of having the Debtor's change its established payment and bookkeeping structure with its hundreds of vendors and its accounting system. Accordingly, the relief sought in this Motion is in the best interest of the Debtor's estate and creditors and will allow the Debtor to continue to operate its business with minimal disruption and transition smoothly into operating as debtor in possession.

## **PRAYER**

30. The Debtor respectfully requests entry of an order to allow the Debtor to continue using its Reimbursement System in its ordinary course of business and any such other and further relief as is just and proper.

Dated: November 28, 2025 /s/ J. Blake Glatstein
Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
Mary Taylor Stanberry
State Bar No. 24143781
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: emily.chou@vhh.law
blake.glatstein@vhh.law
mary.stanberry@vhh.law

PROPOSED ATTORNEYS FOR DEBTOR
AND DEBTOR IN POSSESSION

## CERTIFICATE OF SERVICE

I certify that on November 28, 2025, a true and correct copy of the foregoing document will be served upon the office of the United States Trustee for the Northern District of Texas and the parties that have filed a notice of appearance via the Court's electronic filing (ECF) system.

/s/ J. Blake Glatstein
J. Blake Glatstein

10