IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ECUBE LABS CO., | ) | Case No. 25-43950 |
| | ) | |
| Debtor. | ) | Judge Mark X. Mullin |

**OBJECTION OF THE WASTE CONNECTIONS PARTIES TO
DEBTOR'S CASH MANAGEMENT MOTION FOR ENTRY
OF AN ORDER (1) AUTHORIZING THE DEBTOR TO MAINTAIN
ITS EXISTING REIMBURSEMENT SYSTEM IN THE ORDINARY
COURSE OF BUSINESS, AND (2) FOR RELATED RELIEF**

El Paso Disposal, LP, Waste Connections of Texas, LLC, Waste Connections Lone Star, Inc., and Waste Connections US, Inc. (collectively, the "Waste Connections Parties") file this objection (the "Objection") to the *Debtor's Cash Management Motion for Entry of an Order (1) Authorizing the Debtor to Maintain its Existing Reimbursement System in the Ordinary Course of Business, and (2) for Related Relief* (the "Motion")[1] (Docket No. 87) filed by the above-captioned debtor and debtor-in-possession (the "Debtor"). In support of this Objection, the Waste Connections Parties respectfully state as follows:

**Preliminary Statement**

1.  The Debtor requests authority to maintain its Reimbursement System in the ordinary course. There is <u>nothing</u> ordinary about this "system." According to the Motion, three of the Debtor's officers use their personal credit cards to pay substantially all of the Debtor's operating expenses. (Motion at ¶¶ 10 and 13.) The Debtor then "reimburses" the officers for those charges. Those "reimbursements" randomly occur with "no regular schedule." (*See* November 341 Hearing Tr. at 8:16–17.)[2] What the Motion describes is not a "reimbursement" system. It is millions

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.
[2] A true and accurate copy of the November 341 Hearing Transcript is attached hereto as Exhibit A.

of dollars of revolving unsecured loans that have not been approved as required under section 364 of the Bankruptcy Code.

2.  Within the last year, the Debtor's operating expenses were more than $9 million. (Motion at ¶ 26.) James Noh, the Debtor's CFO and COO, pays "over 80%" of these operating expenses. (*Id.* at ¶ 10 n.1.) Mr. Noh utilizes "7 to 10" personal credit cards to accomplish this. (*See* December 341 Hearing Tr. at 8:24–9:2.)³ In other words, Mr. Noh charged <u>more than $7.2 million</u> to his numerous personal credit cards on the Debtor's behalf in the last year alone. And who at the Debtor authorizes these reimbursements? Mr. Noh. (*Id.* at 9:6–8.) Mr. Noh also testified that he uses these same credit cards for his personal expenses. (*Id.* at 9:3–4.)

3.  The Debtor asserts that this "reimbursement system" is necessary because (a) many of its vendors require online payments; and (b) the Debtor cannot obtain corporate credit cards with high enough limits to satisfy its growing business and increased accounts payable. (*See, e.g.,* Motion at ¶¶ 13 and 14.) According to the Debtor, it could not obtain a corporate credit card because Mr. Noh is not a "US person." (*Id.* at ¶ 13.) The Debtor, a Delaware corporation, does not explain why the company has been unable to obtain a corporate credit card when millions of U.S. businesses, including businesses with foreign parent companies, are able to corporate credit cards.

4.  What the Motion describes is a system that utilizes unsecured loans disguised as reimbursements that are subject to section 364 of the Bankruptcy Code. This "system" is opaque because creditors have no way of knowing how much is being borrowed and the terms on which it is being reimbursed. For example, the bank statements attached to the Debtor's first monthly operating report merely show the purported reimbursements as "online transfers." (*See* Docket No. 73.) Creditors do not know what purported operating expenses those transfers cover. Moreover,

---

³ A true and accurate copy of the December 341 Hearing Transcript is attached hereto as <u>Exhibit B</u>.

2

this "system" has virtually no legitimate oversight because Mr. Noh authorizes the reimbursements—more than 80% of which are to himself.

5. The Court should deny the Debtor's request to continue its "reimbursement system," which is, in fact, unsecured financing that has not been approved under section 364 unless and until the Debtor makes the showings required to obtain financing under section 364. If the Court does allow the Debtor to continue its "reimbursement system," any order granting the Motion should require the Debtor to include with each monthly operating report (a) the personal credit card statements for any credit cards used to pay the Debtor's operating expenses during that month; and (b) a reconciliation statement that shows how reimbursements were applied against the operating expenses.

## Objection

6. The Bankruptcy Code and its guiding principles impose requirements that the Debtor must meet if it wants to enjoy the protections afforded in bankruptcy. One such requirement is clear, transparent disclosure. In a case that has no committee, such disclosures are all the more important to protect the interests of creditors.

    **A.**    **The "Reimbursement System" Is Unsecured Financing That Is Subject to Section 364 of the Bankruptcy Code.**

7. The Debtor's "reimbursement system" is not really a reimbursement system—at this scale, it is a revolving line of credit between the Debtor and its officers, who offer the Debtor credit by paying expenses on their personal credit cards and are later paid back (or "reimbursed") by the Debtor. These are loans that are subject to section 364 of the Bankruptcy Code, and the Debtor must satisfy the requirements under Section 364 for this "system" to be approved.

8. The ability of a debtor-in-possession to incur unsecured debt allowed as an administrative expense under section 503(b)(1) is governed by sections 364(a) and (b) of the

3

Bankruptcy Code. Section 364 covers all post-petition financing situations, including those in and out of the ordinary course. *See, e.g., In re Ockerlund Constr. Co.*, 308 B.R. 325, 330 (Bankr. N.D. Ill. 2004); *In re Nilhan Developers, LLC*, No. 15-58443, 2020 Bankr. LEXIS 2073, at *16 (Bankr. N.D. Ga. July 31, 2020).

9. In determining whether a debt has been incurred in the ordinary course of business, courts employ a two-prong test labeled a vertical test and a horizontal test. *Nilhan Developers* at *17 (citing *In re Husting Land & Dev., Inc.*, 255 B.R. 772, 778–79 (Bankr. D. Utah 2000). "The vertical test looks at the debtor's prepetition business practices and conduct to determine if the transaction comports with creditor expectations (*i.e.*, whether it involves the risks a creditor would typically expect), while the horizontal test focuses on whether the transaction is of the sort common in the industry." *Id.*

10. The Debtor has not attempted to satisfy this standard, nor could it given how highly unusual this "reimbursement system" is. With respect to the vertical test, it is very unlikely that creditors would expect the Debtor's officers to be paying substantially all of the Debtor's operating expenses and then be "reimbursed" by the Debtor, particularly when one of the officers approves the payments with no oversight. With respect to the horizontal test, it is very unlikely that this "reimbursement system" is common in the Debtor's industry. The Debtor has provided no evidence that it has satisfied section 364's requirements. The Motion should be denied.

**B. If the Court Allows the Debtor to Continue Its "Reimbursement System," The Court Should Require the Debtor to File Copies of Those Credit Card Statements and Reconciliation Schedules With Its Monthly Operating Reports.**

11. The Waste Connections Parties object to entry of the proposed order attached to the Motion because it fails to provide the adequate disclosure of information to which creditors are entitled. The Waste Connections Parties specifically request any order require the Debtor to include

with its monthly operating reports two additional attachments: copies of all personal credit card statements for credit cards that were used to pay the Debtor's expenses and statements reconciling the Debtor's application of reimbursements to operating expenses paid on personal credit cards.

12. *First*, the Debtor should be required to include with its monthly operating reports the account statements for each credit card used to pay operating expenses that month. Ordinarily, a debtor's monthly operating report would provide this information to creditors because bank statements would reflect what is being paid to vendors. In this case, the Debtor's bank statements only show "online transfers" to the officers. This does not provide any of the detail the monthly operating reports are designed to provide. As counsel for the U.S. Trustee correctly stated at the initial 341 hearing, the officers' credit card statements are business records that are property of the estate. (*See* November 341 Hearing Tr. at 24:19–24.) Mr. Noh agreed. (*Id.*) The Debtor should be required to file those statements with its monthly operating reports.

13. *Second*, the Debtor should be required to file statements that reconcile the application of reimbursements to operating expenses. According to the Motion, the Debtor is a growing business and this "system" of using credit cards to pay expenses helps with record keeping. (*See* Motion at ¶¶ 10; 14–16.) The Debtor should already be reconciling the reimbursements it pays to ensure they only cover the actual, necessary expenses of the Debtor so this should be easy for the Debtor to provide. Without some sort of reconciliation, creditors can only guess at which reimbursements are covering which operating expenses. This is not acceptable. Creditors are entitled to the detailed information that the reconciliation reports would provide.

## CONCLUSION

14. Accordingly, the Waste Connections Parties file this Objection and respectfully request that (1) the Court deny the Debtor's request to continue its "reimbursement system," which

Case 25-43950-mxm11    Doc 111    Filed 12/19/25    Entered 12/19/25 15:41:27    Desc
Main Document    Page 6 of 8

is, in fact, unsecured financing that has not been approved under section 364 and (2) if the Court allows the Debtor to continue its "reimbursement system," that any order granting the Motion require the Debtor to include with each monthly operating report: (a) the personal credit card statements for any credit cards used to pay the Debtor's operating expenses during that month; and (b) a reconciliation statement that shows how reimbursements were applied against the operating expenses. These additional disclosures will serve to protect creditors at virtually no additional cost to the Debtor.

[*remainder of page intentionally left blank*]

106432.000063\4926-5889-4465.2

| | |
|---|---|
| Dated: December 19, 2025 | Respectfully submitted,<br><br>**BAKER & HOSTETLER LLP**<br><br>By: */s/ Alexis C. Beachdell*<br>Daniel J. Buzzetta (*admitted pro hac vice*)<br>New York Bar No. 2680528<br>dbuzzetta@bakerlaw.com<br>Jorian L. Rose (*pro hac vice forthcoming*)<br>New York Bar No. 2901783 jrose@bakerlaw.com<br>45 Rockefeller Plaza, 14th Floor<br>New York, New York 10111<br>Tel: 212.589.4200<br><br>Alexis C. Beachdell (admitted *pro hac vice*)<br>Ohio Bar No. 0083642 abeachdell@bakerlaw.com<br>Scott E. Prince (admitted *pro hac vice*)<br>Ohio Bar No. 0096004<br>sprince@bakerlaw.com<br>127 Public Square, Suite 2000<br>Cleveland, Ohio 44114<br>Tel: 216.621.0200<br><br>-and-<br><br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>Michael D. Warner, Esq. (TX Bar No. 00792304)<br>700 Louisiana Street, Suite 4500<br>Houston, TX 77002<br>Telephone: (713) 691-9385<br>Facsimile: (713) 691-9407<br>Email: mwarner@pszjlaw.com<br><br>*Attorneys for El Paso Disposal, LP;*<br>*Waste Connections of Texas, LLC;*<br>*Waste Connections Lone Star, Inc.;*<br>*and Waste Connections US, Inc.* |

7

106432.000063\4926-5889-4465.2

## CERTIFICATE OF SERVICE

      I hereby certify that, on December 19, 2025, a true and accurate copy of the foregoing objection was served electronically via the Court's CM/ECF notification system on all parties registered to receive such service.

*/s/ Alexis C. Beachdell*
Alexis C. Beachdell (*admitted pro hac vice*)
*Counsel for El Paso Disposal, LP; Waste Connections of Texas, LLC; Waste Connections Lone Star, Inc.; and Waste Connections US, Inc.*